**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Frank BENALLY, Defendant-Appellant.**

**No. 83–2463.**

United States Court of Appeals,
Tenth Circuit.

March 5, 1985.

---

Presiliano Torres, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., Albuquerque, N.M., with him on brief), for plaintiff-appellee.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Before McKAY, BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellant-defendant Frank Benally was indicted for, and convicted by a jury of, vehicular homicide in violation of 18 U.S.C. §§ 1153 and 1112. He appeals from the sentence pronounced. We reverse.

On February 18, 1983, defendant, a Navajo Indian, gave his neighbors and relatives, Jerry and Dorothy Wilson, also Navajo Indians, a ride from Newcomb, New Mexico, on the Navajo Reservation to Farmington, New Mexico, to do various errands. They drove first to Shiprock, New Mexico, and went to the Turquoise Bar where Jerry Wilson purchased one pint and one fifth of Garden Delux wine. Jerry Wilson and the defendant split the fifth of wine. Tr. 112–113, 415. They met there Ernest and David Kanoi who asked for a ride back to Newcomb. They said they would pick them up after doing their errands. They did so and picked up the Kanois. They then drove to Zia where the Kanois purchased vodka and beer at a bar and Jerry Wilson purchased wine. Jerry Wilson drank wine and the Kanois vodka and beer. The defendant admitted only to drinking beer after the group left the bar at Zia. They proceeded on towards Newcomb with defendant as the driver. The Kanoi brothers were in the front seat, and Dorothy and Jerry Wilson in the back seat. Defendant attempted to pass a truck, Tr. 420, and was travelling approximately 74 miles an hour. Tr. 288. He passed the truck in the passing lane, saw an oncoming car, swerved to the right to avoid it, and the car turned over. Dorothy Wilson was pinned under it and died as a result of her injuries.

Defendant left the scene of the accident and went to his home. Some time later he returned to the scene of the accident and was accosted by a relative of Dorothy Wilson. A police officer took him to a patrol car. Defendant claims that Ernest Kanoi grabbed the steering wheel thereby causing the accident.

Defendant filed a motion to suppress the evidence of statements made by defendant to the officer who took him to the patrol car and later to the hospital. There is a difference of opinion as to whether defendant was under arrest and whether the statements were made voluntarily. At the hearing the defendant announced that the arresting officer, Wilson Billie, was not present. Billie was not under a subpoena to appear. The court peremptorily denied the motion. A recess of five minutes was taken. Defendant announced that Billie was in the hall. The court said that it had ruled on the motion.

Section 3501(a) Title 18 U.S.C. provides:

"In any criminal prosecution brought by the United States ... a confession ... shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness."

Rule 12(b)(3), Fed.R.Crim.P. provides that a motion to suppress evidence shall be made before trial. Section 3501(a) "codifies the constitutional requirement for a hearing on the voluntariness of a defendant's confession announced by the Supreme Court in *Jackson v. Denno,* 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908]." *United States v. Janoe,* 10 Cir., 720 F.2d 1156, 1164, cert. denied — U.S. —, 104 S.Ct. 1310, 79 L.Ed.2d 707. The government insists that the error was harmless in view of the cross-examination of officer Billie at the trial. Tr. 243–255. As we said in *Janoe,* supra at 1164:

"First, § 3501(a) affirmatively requires that the 'trial judge *shall* ... determine any issue as to [the] voluntariness' of a

confession; it does not leave the question whether to hold a hearing to the judge's discretion."

■ The witness was available after a five minute recess. The action of the trial court in summarily denying the motion is indicative of the impatience which the court showed throughout the trial. The judgment is reversed because of the failure of the court to hear the motion to suppress and determine the voluntariness of the confession.

Defendant argues that the court erred in instructing the jury as to intoxication under New Mexico law. Section 1153, 18 U.S.C. provides:

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely ... manslaughter ... within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses within the exclusive jurisdiction of the United States.

... any other of the above offenses which are not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense."

Section 1112(a) provides:

"Manslaughter is the unlawful killing of a human being without malice. It is of two kinds....

Involuntary—In the commission of an unlawful act not amounting to a felony, or the commission in unlawful manner, or without due caution and circumspection, of a lawful act which might produce death...."

The offense charged, involuntary manslaughter, is defined and punished by federal law under § 1112 and, consequently, United States law preempts state manslaughter law. *United States v. Pardee*, 4 Cir., 368 F.2d 368, 373. The court apparently thought that state law would apply under the Assimilative Crimes Act, 18

U.S.C. § 13. It provides that whoever commits an act on an Indian Reservation, "although not made punishable by any enactment of Congress," which would be punishable under state law shall be guilty of a like offense. The offense charged has been made punishable by an act of Congress and is not within the Assimilative Crimes Act. *Pardee*, supra, 368 F.2d at 373.

To prove that defendant committed involuntary manslaughter under § 1112, the government must show that his conduct was grossly negligent and that he "had actual knowledge that his conduct was a threat to the lives of others ... or he had knowledge of such circumstances as could reasonably be said to have made foreseeable to him the peril to which his acts might subject others." *United States v. Keith*, 9 Cir., 605 F.2d 462, 463. Gross negligence is defined "as wanton or reckless disregard for human life." See *United States v. Pardee*, supra, 368 F.2d at 373–374.

■ The court properly instructed the jury on gross negligence but went on to instruct the jury that "A person is under the influence of intoxicating liquor when as a result of drinking such liquor he is less able, to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to himself and the public." R. 104. In so doing the court was stating New Mexico law. See § 66–8–102, N.M.S.A.1978 and *State v. Dutchover*, App., 85 N.M. 72, 509 P.2d 264, 265. The New Mexico law of intoxication is inconsistent with federal law requiring a finding of gross negligence. It is enough to say that the Assimilative Crimes Act forbids the application of New Mexico instructions. The conviction is reversed because of the erroneous instructions to the jury. Other objections to the instructions are noted but need not be discussed.

■ A theory of the defense was that the accident was caused by the intervening act of Ernest Kanoi in grabbing the steering wheel. Defendant says that the court

erred in excluding testimony of Jerry Wilson as hearsay. Wilson testified that because he was in the back seat he did not know if Ernest Kanoi grabbed the steering wheel. He testified that he told Paul Lucero, the defendant's investigator, that "maybe" Ernest Kanoi grabbed the wheel. Tr. 126. Defense counsel asked Wilson, "Did other people in the car, beside you or Ernest warn Ernest not to do that [grab the wheel]?" The trial court ruled that the question called for inadmissible hearsay. Defendant argues that the statements should have been admitted as an excited utterance under Fed.R.Evid. 803(2). At trial the defendant sought to have the testimony in question admitted under Fed.R. Evid. 803(24) because Kanoi was dead. Defendant did not properly preserve the issue of whether the testimony should have been admitted under Rule 803(2) to merit consideration on appeal.

■ In closing argument the prosecutor referred to the Kanoi incident and, according to defendant, misstated the law. No objection was made. An advocate is given "considerable latitude" in responding to his opponent's arguments. *Sanchez v. Heggie*, 10 Cir., 531 F.2d 964, 967, cert. denied 429 U.S. 849, 97 S.Ct. 135, 50 L.Ed.2d 122. The error, if any, does not rise to the level of "plain error." *United States v. Young*, 1985, — U.S. —, 105 S.Ct. 1038, 84 L.Ed.2d 1.

■ Defendant objects to the reception of evidence of an Intoxilyzer test given him after the accident. The test determines the quantity of alcohol in the system. The test showed that defendant had a blood-alcohol concentration of .24, more than twice the legal limit in New Mexico. As the test was run by an Indian officer on the Indian reservation, the New Mexico regulations regarding the qualifications of the testing officer and the maintenance of the machine do not apply. The record reveals little about the officer's training or experience. He stated that he followed the basic procedures in administering the test. The last calibration of the machine had occurred in Minturn, Colorado, about two months previously. An expert for the defense testified that he would not have much confidence in the results of a machine that had last been calibrated two months previously. Tr. 374. He admitted that he could not say that a test result would be inaccurate because it had not had a calibration check. He further said that an Intoxilyzer is a highly reliable piece of equipment and that it should have a calibration check every seven days. Tr. 389. Everything considered, the objections to the use of the Intoxilyzer go to the weight which should be given to the tests. That was for determination by the jury.

The defendant objected to evidence concerning the level of blood-alcohol concentration at which a person is considered presumptively intoxicated under New Mexico law. This type of testimony goes to what weight should be given the results of the Intoxilyzer and is admissible for this purpose, as long as the federal government has not established a level of blood-alcohol concentration at which a person is considered intoxicated. We note that the federal government has stated in the Uniform Standards for State Highway Safety Programs, 23 C.F.R. § 1204.4, p. 486, that each state must establish: "[t]he blood-alcohol concentrations, not higher than .10 percent by weight, which define the terms 'intoxicated' or 'under the influence' of alcohol."

Defendant argues that the government should be required to substantiate the tests by providing a second breath sample and permitting retesting. The Supreme Court held in *California v. Trombetta*, — U.S. —, 104 S.Ct. 2528, 2535, 81 L.Ed.2d 413, that there is no requirement under the Fourteenth Amendment due process clause that law enforcement agencies make provisions for a second breath sample.

■ In questioning a character witness for the defendant, the prosecutor asked whether the witness knew that the defendant had been arrested three times for public intoxication and convicted once for driving while intoxicated. He denied such knowledge. The prior arrests and conviction were not referred to again during the

trial. The trial court, over the objection of defendant, instructed the jury thus, R. 115:

"Testimony has been presented of other acts, wrongs or crimes committed by the defendant at earlier times. This testimony was not offered to show that the defendant committed the offense with which he is charged here and you cannot consider it at all for that purpose. You can consider it only for the purpose of showing the defendant's motives, intent, knowledge, or absence of mistake or accident in this case. You can reject it entirely and not consider it at all if you see fit."

The giving of the instruction was wrong. There was no evidence of prior crimes.

The parties stipulated that:

"It is stipulated between the parties, Frank Benally, his counsel and the government, that the government witnesses would testify to the following facts...."

These facts were that the defendant and the victim were both Indians and that the crime occurred in Indian country.

Over the objection of defendant, the court instructed the jury that:

"*Second:* that the offense charged in the indictment took place in Indian country. This element has been stipulated to by the parties and you must accept it as being true...."

Defendant argues that he introduced testimony that the road was a state-maintained highway which raised a reasonable doubt as to whether the accident occurred in Indian country. A witness testified that the road where the accident occurred was primarily a state road and that he was sure there was federal assistance involved in its maintenance. Tr. 298.

In *United States v. Spann,* 10 Cir., 515 F.2d 579, 583, we said:

"[A] stipulation as to the testimony a witness would give if called, although it may constitute evidence of the facts covered, is not an admission of the truth of such testimony and does not prevent a party from attacking it as he might attack the testimony itself, had it been given."

■ The instruction that the jury must accept that the accident occurred in Indian country as true because it had been stipulated by the parties is reversible error. The jury was free to consider the stipulated testimony and the other evidence.

At the beginning of the trial the court entered an order pursuant to Rule 615, Fed.R.Evid. for the exclusion of witnesses except that the parties may designate a representative to sit with them at the counsel table. The government designated officer Wilson Billie. The defense made no designation.

■ The defense called Paul Lucero, an investigator for the defendant, who had been at the counsel table throughout the trial. The court refused to allow him to testify. Tr. 397. In so doing the court did not abuse its discretion. *United States v. Gibson,* 6 Cir., 675 F.2d 825, 835, cert. denied 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285; *United States v. Kiliyan,* 8 Cir., 456 F.2d 555, 561.

■ The court sentenced defendant to three years imprisonment, the maximum permitted by § 1112(b). Defense argues that in so doing the court improperly considered state court and Indian tribal convictions in which defendant was not represented by counsel. The state court conviction was for shoplifting and defendant, who was not represented by counsel, received a $20.00 fine. In *Scott v. Illinois,* 440 U.S. 367, 368, 99 S.Ct. 1158, 1159, 59 L.Ed.2d 383, a defendant who had been fined $50.00 for shoplifting argued that the trial court should have appointed counsel for him because the statute under which he was prosecuted authorized imprisonment. The Court held that the Sixth and Fourteenth Amendments do not require a state to appoint counsel for a defendant who is charged with an offense for which imprisonment is authorized but not imposed. 440 U.S. at 373–374, 99 S.Ct. at 1161–1162. Defendant was fined $20.00 for his shoplifting

conviction and that conviction may be considered in this case.

The pre-sentence report showed that the defendant had been arrested and convicted for various offenses, including traffic violations, drunkenness, disorderly conduct, and driving while under the influence. Supp. Vol. II, p. 5. Defendant received sentences ranging from six days in custody to 120 days on probation and paid fines ranging from $2.00 to $150.00. Id. In none of the cases was he represented by counsel. He argues that none of these sentences can be considered in sentencing. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592.

It was held in *Settler v. Lameer*, 9 Cir., 507 F.2d 231, 241–242 that Indian tribal courts are not required by the Sixth and Fourteenth Amendments to provide Indians living on reservations with representation by counsel in proceedings before tribal courts. The decision was before the enactment of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302. It provides in its subsection 6 that no Indian tribe in exercising powers of self-government shall:

> "(6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and *at his own expense to have the assistance of counsel for his defense.*" [Emphasis supplied.]

After reviewing the language of the statute and its legislative history, the Ninth Circuit held in *Tom v. Sutton*, 9 Cir., 533 F.2d 1101, 1104: "Congress in enacting the Indian Bill of Rights did not intend to require the Indian tribal courts to provide counsel for indigent defendants in criminal cases." We agree.

The rationale is that the Indian tribes are quasi-sovereign nations and that the protections of the Constitution do not apply to tribal actions brought against Indians in tribal courts. Id. at 1102–1103. In sentencing an Indian the court may consider the defendant's uncounselled tribal convictions.

Our attention has been called to the decision of the Tenth Circuit in *Santillanes v. United States Parole Commission*, 754 F.2d 887. That case did not involve the conviction of an Indian in a tribal court.

Other errors of the trial court have been considered, but need not be discussed.

Reversed and remanded for a new trial.