**UNITED STATES of America, Appellee,**

v.

**Loren K. McMILLAN, Appellant.**

No. 86–5221.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 8, 1986.

Decided May 28, 1987.

Rehearing Denied July 14, 1987.

---

252

Jeffrey A. Springer, Denver, Colo., for appellant.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., for appellee.

Before ROSS, JOHN R. GIBSON, and FAGG, Circuit Judges.

ROSS, Circuit Judge.

Loren K. McMillan appeals his conviction of involuntary manslaughter in violation of 18 U.S.C. §§ 1152 and 1112 for which he was sentenced to thirty months imprisonment and a fine of $2000. For reversal, McMillan's primary arguments are that: 1) the indictment failed to allege a crime because it improperly incorporated South Dakota law into the federal manslaughter statute; 2) the district court [1] erred in refusing to grant McMillan's motion to suppress results of an intoxilyzer test; and 3) the district court erred in giving certain jury instructions. We affirm.

**Facts**

The charge against McMillan, a non-Indian, arose from a March 9, 1985 motor vehicle accident in which Faith Ghost Bear, an Indian, was killed. On that night, Ghost Bear and her husband had gone to the intersection of Highway 18 and Kyle Road on the Pine Ridge Indian Reservation to attempt to start a friend's car which had stalled. At the time of the accident, the Ghost Bear car and the other car were parked facing each other in the eastbound lane of Kyle Road, between a stop sign and the intersection of Kyle Road and Highway 18.

The facts of the accident are somewhat disputed. The government's evidence was that at about 10:00 p.m. McMillan's 1978 Chevrolet pickup ran the stop sign and collided with the two cars which were parked 60 feet beyond. A later examination of McMillan's speedometer showed that he was going about 70 m.p.h. at the time of impact. There was further testimony that all three vehicles had their lights on when the accident occurred.

McMillan, on the other hand, testified that he was travelling 40–45 m.p.h. as he approached the stop sign. He presented evidence that the lights of the parked vehicles were turned on just prior to impact.

McMillan testified that he had three drinks between 6:00 and 8:00 p.m. that night. He failed a portable breath test that was administered to him at the scene of the accident. He also failed field sobriety tests. An intoxilyzer breath test was performed on McMillan two hours after the accident and it showed his blood alcohol content to be .17.

**Sufficiency of the Indictment**

The federal involuntary manslaughter statute under which McMillan was indicted, 18 U.S.C. § 1112(a), provides that involuntary manslaughter is the "unlawful killing of a human being without malice * * * [i]n the commission of an unlawful act not amounting to a felony * * *." The indictment set forth four "unlawful acts" allegedly committed by McMillan which led to Ghost Bear's death. Specifically, the indictment charged that McMillan drove in excess of the speed limit in violation of S.D.C.L. 32–25–11.2, drove with alcohol in his blood and while under the influence of alcohol in violation of S.D.C.L. 32–23–1, and failed to stop at a stop intersection indicated by a stop sign in violation of S.D.C.L. 32–29–2.1.

McMillan argues that South Dakota law may not be incorporated by the federal manslaughter statute, and therefore the indictment failed to allege a crime. The gist of McMillan's argument is that under the Assimilative Crimes Act, 18 U.S.C.

**1.** The Honorable Richard I. Battey, United States District Judge for the District of South Dakota.

§ 13,[2] the government may resort to state law only if no act of Congress makes the defendant's acts punishable. Therefore, he contends that because a federal statute makes unlawful the offense charged in the indictment, i.e., involuntary manslaughter, South Dakota law may not be used to define the underlying "unlawful act." We disagree.

McMillan misperceives the application of the Assimilative Crimes Act to this case. This court has stated that the test of whether state law is applicable under the Assimilative Crimes Act is whether the acts of the defendant are punishable under any enactment of Congress. *United States v. Butler*, 541 F.2d 730, 737 (8th Cir.1976). In this case, the government is not urging us to apply elements of the South Dakota law on involuntary manslaughter. In such a case, McMillan's argument may have merit.

██ Rather, in this case the state laws at issue are South Dakota traffic laws. It is undisputed that there are no enactments of Congress which prohibit driving while intoxicated, failing to stop at stop intersections or driving in excess of the speed limit on the Pine Ridge Reservation. Consequently, under the Assimilative Crimes Act the South Dakota traffic laws regarding these offenses are assimilated into federal enclave law. *See United States v. Pino*, 606 F.2d 908, 915 (10th Cir.1979). Hence, the indictment which alleged that McMillan violated these South Dakota traffic laws properly alleged violations of "unlawful acts" for the purposes of the involuntary manslaughter statute. To hold in accordance with McMillan's argument would require us to determine that because the federal involuntary manslaughter statute is an enactment of Congress, violations of state law can never serve as the underlying unlawful act. We find such a result to be

supported neither by caselaw nor the language of the manslaughter statute.

McMillan argues that this court should apply the holding of *United States v. Benally*, 756 F.2d 773 (10th Cir.1985) to the case at hand. In *Benally*, the Tenth Circuit determined that the Assimilative Crimes Act prohibited application of New Mexico instructions regarding intoxication to a prosecution under the federal involuntary manslaughter statute. The court found that the New Mexico instruction, which provided that a person is under the influence of intoxicating liquor if his ability to handle a vehicle safely is affected to the slightest degree, was inconsistent with the federal involuntary manslaughter statute which requires a finding of gross negligence. *Id.* at 776.

We note that the issue in *Benally* was not the same as the issue faced by this court. The *Benally* court did not discuss at any point whether violations of state law may constitute unlawful acts for the purposes of the federal involuntary manslaughter statute. Therefore, we decline to apply *Benally* to this case.

### Intoxilyzer

McMillan next argues that the trial court erred in denying his motion to suppress evidence of the results of the intoxilyzer test, contending that the test was not performed in conformity with South Dakota law and regulations. McMillan relies on S.D.C.L. § 32–23–14.1 (1984) which provides in part: "To be considered valid under the provisions of this chapter, the chemical test analysis of the person's breath shall have been performed according to methods approved by the state chemist and by an individual possessing a valid permit issued by the state chemist for this purpose." *See also State v. Richards*, 378 N.W.2d 259, 261 & n. 1 (S.D.1985) (discussing the "prima facie evidence" the state

---

**2.** The Assimilative Crimes Act, 18 U.S.C. § 13, provides that a person who commits an act on a federal reservation:

 which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdic-

tion of the State * * * in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

must produce before intoxilyzer results are admissible).

A representative of the South Dakota state chemist testified at the hearing on the motion to suppress and at trial that the methods approved by the state chemist include monthly calibration of the intoxilyzer, immediate repair in the event of machine malfunction, and the presence of a witness to the administration of the intoxilyzer test. McMillan contends that the evidence showed that these procedures were not followed in this case. The district court denied McMillan's motion to suppress, stating that his objections went to the weight rather than the admissibility of the evidence.

 The district court did not err in denying McMillan's motion to suppress. In a federal criminal proceeding, the admissibility of evidence is governed by federal standards. *See United States v. Collins,* 552 F.2d 243, 247 (8th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *United States v. Sacco,* 491 F.2d 995, 1003 (9th Cir.1974). *See also United States v. Neville,* 516 F.2d 1302, 1309 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). We agree with the district court that McMillan's objections to the procedures employed in the administration of the intoxilyzer went to the weight of the evidence.

The representative of the state chemist testified that the type of intoxilyzer used in this case was an approved instrument for blood alcohol determinations, and that it operated in accordance with accepted scientific principles. As noted by McMillan, this witness also stated that the machine should be calibrated for accuracy approximately every thirty days. For the period surrounding the administration of the test to McMillan (on March 9, 1985), the intoxilyzer was calibrated on February 21, 1985 and April 7, 1985.

The state trooper who administered the intoxilyzer test to McMillan was certified by the state chemist to operate an intoxilyzer. He testified as to the procedures he followed in administering the test to McMillan, which he performed in accordance with a checklist provided by the state. He stated that although there was no witness present during these procedures, the administration of the intoxilyzer test to McMillan was videotaped. This videotape was played for the jury.

McMillan had sufficient opportunity at trial to bring out any alleged deficiencies in the procedures followed in the performance of the test. The determination of the weight to be given the test results was for the jury.

**Jury Instructions**

**A. Instruction 21**

McMillan objects to the giving of several jury instructions. First, he objects to Instruction 21 which provided:

> You are instructed that if you find from the evidence that the Defendant was merely negligent in causing the victim's death through inadvertence, forgetfulness, lack of attention or thoughtlessness, then such conduct alone will not support a finding of the crime charged and you must find the Defendant not guilty. In order to find the Defendant guilty of the crime charged, you must find from the evidence that the Defendant caused the victim's death as a result of conduct that was unlawful *or* that exhibited a conscious indifference or reckless disregard for human life. (Emphasis added.)

 The rule in this circuit is that a conviction of involuntary manslaughter requires a finding that the defendant

> "acted grossly negligently in that he acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could reasonably have enabled him to foresee the peril to which his act might subject others."

*United States v. Opsta,* 659 F.2d 848, 849 (8th Cir.1981) (quoting *United States v. Schmidt,* 626 F.2d 616, 617 (8th Cir.), *cert. denied,* 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 136 (1980)). McMillan argues that Instruction 21 removed the elements of gross negligence and knowledge from the government's burden of proof such that

the jury could have convicted him simply for committing an unlawful act.

■ It is well established that when a single jury instruction is alleged to be incorrect, it is not to be reviewed in isolation but rather in the context of the charge as a whole. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 367 (1973). Moreover, the charge is to be read in the context of the whole trial. *United States v. Park*, 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912–13, 38 L.Ed.2d 367 (1975). We agree that if the last sentence of Instruction 21 were to be read in isolation, it would appear that part of the government's burden of proof had been removed. However, any error in that instruction was harmless in light of the instructions as a whole and in the context of the entire trial.

The jury was specifically charged in two other instructions that they must find the elements of gross negligence and knowledge beyond a reasonable doubt in order to convict McMillan. Instruction 7 charged the jury that there were "four essential elements" to the crime of involuntary manslaughter: 1) that McMillan caused Ghost Bear's death in the commission of one of the enumerated unlawful acts; 2) that he caused Ghost Bear's death within the territorial jurisdiction of the United States; 3) that in the commission of the unlawful act he acted in a grossly negligent manner; and 4) that he had knowledge that his conduct was a threat to the lives of others, or that such was reasonably foreseeable.

A second instruction, No. 8, provided that gross negligence was an element of the crime of involuntary manslaughter and that it must be proved beyond a reasonable doubt. This instruction also defined gross negligence.

Another instruction, No. 4, tracked the language of the indictment. It informed the jury that McMillan was charged with killing Ghost Bear while driving in a grossly negligent manner and in violation of several South Dakota statutes, and that he had knowledge that his conduct was a threat to the lives of others, or could have reasonably foreseen such.

Looking at Instruction 21 in the context of the instruction immediately previous to it is further evidence that the jury was properly charged. Instruction 20 provided in part "If you find that the government has proved beyond a reasonable doubt that the defendant committed one or more of the unlawful acts alleged in the indictment, then you should determine whether or not the government has proved the other essential elements of the crime charged." It was thereby made clear to the jury that more than simply the commission of an unlawful act was necessary for conviction.

It should further be noted that the purpose of Instruction 21 was not to set out the elements of involuntary manslaughter. The elements of involuntary manslaughter were set out in Instruction 7. The purpose of Instruction 21, on the other hand, was to differentiate simple negligence from gross negligence. Therefore, it is not likely that the jury was confused or thought Instruction 21 contained all the elements of the offense charged.

Instruction 21 should also be considered in the context of the trial as a whole. Counsel for both parties stated in their opening statements to the jury that gross negligence was an element of the crime charged, and repeated such remarks in their closing statements. In addition, the government presented a great deal of evidence attempting to show the gross negligence of McMillan. For example, the government's expert testified that an examination of McMillan's speedometer after the accident indicated that he was travelling 70 m.p.h. at the time of impact. The accident occurred 60 feet past a stop sign which McMillan admitted he had failed to heed. Another expert testified that an examination of the light bulbs from all the vehicles involved in the accident indicated that all of the vehicles had their lights illuminated at the time of impact. Several police officers testified as to McMillan's state of intoxication. McMillan failed two sets of field sobriety tests and a preliminary breath test, and an intoxilyzer test performed two hours after the accident showed his blood alcohol content to be .17. The expert from the state chemist's office

testified that assuming McMillan had nothing to drink in those two hours after the accident, his blood alcohol content at the time of the accident would have been .20. This same expert testified that any person, regardless of age, size, or history of drinking, who had a blood alcohol content of .17 would be under the influence. We therefore find that from the instructions as a whole in the context of the entire trial, the charge to the jury was proper.

McMillan also argues that reversal is required because Instruction 21 is inconsistent with Instruction 7, which properly set out the necessary elements of involuntary manslaughter. McMillan relies on *United States v. Varner*, 748 F.2d 925, 927 (4th Cir.1984) in which it was held that "[w]here two instructions are in conflict, and one is an incorrect statement of the law and is clearly prejudicial, the charge constitutes reversible error." We reject this argument because we do not find that Instruction 21 was "clearly prejudicial" in light of the instructions as a whole, nor was it likely to have created confusion in the jurors' minds.

### B. Instructions 6 and 8

■ The involuntary manslaughter statute under which McMillan was indicted, 18 U.S.C. § 1112, provides that involuntary manslaughter may be committed in two ways, "[i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." The indictment in this case charged McMillan only with the first type of involuntary manslaughter, killing a human being in the commission of an unlawful act. However, Instructions 6 and 8 tracked the statutory language and provided that involuntary manslaughter was the killing of a human being either in the commission of an unlawful act *or* in the commission of a lawful act without due caution. McMillan argues that

these two instructions impermissibly amended and broadened the indictment, mandating reversal.[3]

Again, these instructions must be considered in light of the charge as a whole. As previously noted, Instruction 4 repeated the language of the indictment, informing the jury that McMillan was charged only with that part of the involuntary manslaughter statute which pertained to the commission of an unlawful act. Instruction 7 provided that one of the necessary elements of the crime for which McMillan was charged was the commission of an unlawful act. Instruction 20 told the jury that "if you find that the government has failed to prove beyond a reasonable doubt that the defendant committed at least one of the unlawful acts charged in the indictment you must find the defendant not guilty of the crime of involuntary manslaughter." Eight other instructions were concerned with defining the underlying state traffic violations, or "unlawful acts," which McMillan allegedly committed.

Additionally, the government's case was based on the allegation that Ghost Bear's death occurred in the commission of an unlawful act, rather than in the commission of a lawful act without due caution. Further, the arguments of counsel for both parties at trial informed the jury that the commission of an underlying unlawful act was a necessary element of the offense. As a result, the jury was fully informed and instructed as to the portion of the involuntary manslaughter statute under which McMillan was charged.

### C. S.D.C.L. § 32–23–1(1)

One of the four unlawful acts which the indictment alleged McMillan committed was violation of S.D.C.L. § 32–23–1(1), driving a motor vehicle while having a blood alcohol content of .10 or more. McMillan contends that this offense should not have been included as an unlawful act because

---

**3.** McMillan also argues that Instruction 21 also constituted a material deviation from the indictment. Instruction 21 provided in part that in order to find McMillan guilty, the jury must find that he caused Ghost Bear's death "as a result of conduct that was unlawful *or* that

exhibited a conscious indifference or reckless disregard for human life." (Emphasis added.) For the same reasons that we find that Instructions 6 and 8 were not prejudicial, we determine that this instruction was not prejudicial.

section 32–23–1(1) is a "strict liability" offense requiring no culpable mental state for violation, while a conviction under the federal involuntary manslaughter statute requires a finding of gross negligence. McMillan argues that because a person cannot commit a "strict liability" crime in a grossly negligent manner, the offense cannot serve as the underlying act for his conviction.

■ We are not persuaded by McMillan's argument. As noted, the indictment and the jury instructions, as well as the arguments of both counsel, made clear to the jury that in addition to finding that McMillan committed an unlawful act, a finding of gross negligence was necessary before a guilty verdict could be returned. The jury was not instructed that driving with a .10 blood alcohol content was in itself gross negligence. As we have already noted, there was a great deal of evidence presented at trial from which the jury could have made a finding of gross negligence.

**D. Voluntary Intoxication**

The district court gave the following instruction:

> There is evidence in this case tending to show that the Defendant may have been intoxicated prior to and at the time of the alleged commission of the offense with which he is charged. Intoxication may be used to rebut evidence of specific intent where the crime charged is one requiring a specific intent to commit the crime. In this case, however, the crime charged does not require specific intent. Therefore, no act committed by the Defendant while in a state of voluntary intoxication, if you so find, shall be deemed less criminal by reason of his having been in such condition.

McMillan agrees that the instruction correctly states the law that involuntary manslaughter is a general rather than a specific intent crime and voluntary intoxication is not a defense to general intent crimes. *See United States v. Lavallie*, 666 F.2d 1217,

1219 (8th Cir.1981); *United States v. Hanson*, 618 F.2d 1261, 1265 (8th Cir.), *cert. denied*, 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d ,67 (1980). McMillan contends, however, that the instruction was improper because it gave the jury the impression that the trial judge thought that McMillan was intoxicated at the time of the incident. McMillan argues that this was unduly prejudicial in light of the fact that two of the underlying offenses on which the government had the burden of proof were intoxication offenses.

McMillan relies on *United States v. Lavallie, supra,* in which this court reversed a conviction on the grounds that a voluntary intoxication instruction denied the defendant the right to a fair trial. The offense in that case was also a general intent crime. As in the case at bar, Lavallie did not claim intoxication as a defense nor did he request the intoxication instruction. However, unlike this case, in *Lavallie* we determined that there was no evidence that Lavallie had been intoxicated at the time the offense occurred. Therefore, we held that "[w]ith neither evidentiary support nor relevance to the crime charged, the instruction may well have misled the jury by implying that Lavallie was 'a drunken Indian.'" *Lavallie, supra,* at 1220.

■ We do not find the voluntary intoxication instruction to be prejudicial in this case. There was a great deal of evidence presented at trial as to McMillan's intoxication at the time of the accident. The trial judge, in response to McMillan's objection at trial, stated that he was giving the instruction to make clear to the jury that voluntary intoxication was not a defense to the underlying offenses of speeding and failing to stop at the stop sign. Because the instruction was a correct statement of the law, and because there was evidentiary support for it, we conclude that the giving of the voluntary intoxication instruction was not prejudicial.[4]

---

4. McMillan also raises other objections to the jury instructions, and makes an equal protection claim. After carefully considering the briefs and the record, we determine that these issues are without merit.

**Conclusion**

For the foregoing reasons, we affirm the conviction of Loren K. McMillan.