UNITED STATES of America,
Appellant,

v.

Sylvan George Beautiful BALD
EAGLE, Appellee.

No. 87–5356SD.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1988.

Decided June 20, 1988.

Curt R. Ewinger, Aberdeen, S.D., for appellant.

Philip N. Hogen, Sioux Falls, S.D., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant Sylvan George Beautiful Bald Eagle contends that the evidence was insufficient to establish all the elements of the crime of which he was convicted and also complains of the sufficiency of a supplemental instruction in response to a question from the jury. We affirm.

Appellant was convicted on five counts of involuntary manslaughter in violation of 18 U.S.C. §§ 1153 and 1112. The former section reads, in pertinent part:

> Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter ... within the Indian country,[1] shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

Involuntary manslaughter is defined by 18 U.S.C. § 1112 as "the unlawful killing of a human being without malice.... In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death."[2]

---

* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. Indian country is defined in 18 U.S.C. § 1151.

2. In determining what constitutes an "unlawful act" under this provision, the Assimilative Crimes Act, 18 U.S.C. § 13, permits resort to local law (in the case at bar the Code of Justice.

Moreover, as stated in *U.S. v. McMillan,* 820 F.2d 251, 255 (8th Cir.1987), c.d. 108 Sup.Ct. 234:

The rule in this circuit is that a conviction of involuntary manslaughter requires a finding that the defendant "acted grossly negligently in that he acted with a wanton or reckless disregard for human life, knowing that his conduct was a threat to the lives of others or having knowledge of such circumstances as could reasonably have enabled him to foresee the peril to which his act might subject others."

The *McMillan* case also holds that involuntary manslaughter "is a general rather than a specific intent crime and voluntary intoxication is not a defense to general intent crimes." (820 F.2d at 258).

To establish that the tragic death of appellant's five children resulted from an unlawful act on his part, the government relies on the following provisions of the Code of Justice of the Standing Rock Sioux Tribe which enact that child neglect constitutes an unlawful misdemeanor:

Title IV, Section 4–1204 of the Standing Rock Sioux Tribe Code of Justice states:

Any parent or person having custody of a child who abuses or neglects that child (as defined in Tribal Code Section 6–101) is guilty of a Class B Misdemeanor for the first offense and a Class A Misdemeanor for each subsequent offense.

Tribal Code Section 6–101(3) defines a neglected child as follows:

A child (a) whose parent or guardian fails to provide the minimal care which a reasonably prudent parent would provide in the circumstances for the subsistence, education, and welfare of the child, ...

In the light of the foregoing legal framework, we examine briefly the facts disclosed by the record regarding the sad events of the case at bar.

On February 28, 1987, appellant and his wife Rosella, together with their five children ranging in age from four years to one month, lived in a three room house on the Standing Rock Sioux Indian Reservation, in Indian country.[3] They had been confined to their home by a heavy snow. That afternoon appellant was chopping wood for the stove which was the only source of heat in the house.

At 4 p.m. appellant's brother John La Framboise, arrived with a half gallon bottle of vodka, and the two men built a fire in an abandoned house next to the woodpile and began drinking. Rosella urged her husband to quit drinking and an argument ensued. Rosella at about 7 p.m. decided to leave the house and not return that night, fearing the customary abuse that she received when her husband was drunk. When she left he forbade her to take the baby or their four-year old son Evan with her because of the deep snow.

At about 10 p.m. appellant left to look for Rosella, leaving no one in the house but the five children; his brother had left previously and was found lying in the snow near a trailer at 9 p.m.

At 4 a.m. neighbors saw the Bald Eagle house on fire. The bodies of the five children were found, and tests showed that they had died of carbon monoxide poisoning, probably from smoke inhalation.

Appellant's first argument is that the elements of the offense were not sufficiently proved. Appellant's contention is "that the Tribal Code's definition of child neglect necessarily carries with it the presumption that the parent or guardian is competent and capabled [*sic*] of caring for a child at the time the offense of child neglect occurs."[4] In other words, a deliberate election between care and neglect must be made, by a parent capable of embracing either alternative; but appellant, by reason of his drunken stupor was not capable of providing proper care, and therefore cannot be guilty of neglect.

It is difficult to comprehend the logic of this argument. Acceptance of appellant's theory would prevent social service agencies from ever succoring a child whose

---

of the Standing Rock Sioux Tribe). *U.S. v. McMillan,* 820 F.2d 251, 254 (8th Cir.1987).

**3.** See note 1, *supra.*

**4.** Appellant's Brief, p. 7.

parent was chronically unable to provide proper care. Only children whose parent was capable of providing proper care, but intentionally chose not to do so, could be found to be a neglected child; a child whose parent *never* was capable of furnishing proper care could never be pronounced a neglected child. We are unable to accept this interpretation of the Sioux code.

The fact that appellant's wife Rosella did not apprise him before he began drinking that she was going to leave the house and not return that night cannot serve as an excuse erasing the culpability of voluntarily disabling himself from providing care for his children, or negating his knowledge of or the foreseeability of the peril to which he was exposing the lives of the offspring whom it was his duty to protect from danger. That voluntary intoxication is no defense in a case where specific intent is not an element of the offense but general *mens rea* suffices has already been noted (*McMillan*, 820 F.2d at 258).

Nor do we find appellant's second argument persuasive, where he complains that the trial court's supplemental instruction given in response to a question from the jury may have resulted in confusion of the jury to his detriment.

There is no likelihood that the jury convicted appellant on the basis of simple negligence. Indeed the very fact that they requested further explanation of the difference between ordinary and gross negligence is indicative of their understanding, on the basis of instructions already given, that gross negligence would be necessary in order to reach a verdict of guilty.

The trial court had already given that instruction (# 17) as well as the definition of gross negligence (# 10). The supplemental instruction therefore defined ordinary negligence, which had been mentioned only peripherally in the original charge,[5] as the court wished to focus attention on the matters that constituted elements of the offense which must be established to the satisfaction of the jury beyond a reasonable doubt.

It was therefore unnecessary to add to the responsive supplemental instruction by repeating that if only ordinary negligence were proved the jury must acquit. It would likewise have been a work of supererogation to repeat the definition of gross negligence which had previously been emphasized as an essential element of the offense charged. A comprehensive definition of ordinary negligence was all that was necessary in order to answer responsively the jury's question in order to clarify the distinction between the two types of negligence.

The supplemental instruction, admittedly correct intrinsically, was therefore adequate. No confusion or detriment to appellant could have resulted from failure to gild the lily by repeating other instructions which were obviously clearly understood by the jury. The responsive supplementary instruction, which covered the particular matter which had not been fully developed in the original charge and concerning which the jury desired further information, was obviously sufficient. There was no error in giving it and confining it to the form in which it was given.

For the foregoing reasons, the judgment of the District Court is

AFFIRMED.

---

5. In instruction # 17, which pointed out that mere simple negligence (such as inadvertence, forgetfulness, lack of attention, or thoughtlessness) as distinguished from gross negligence, would not suffice to establish the third element of the offense as defined in instruction # 9.