99 F.3d 1151
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Bonnie L. WERN, Plaintiff-Appellant,
and
John Wern, Plaintiff,
v.
Meade DAVIS, III, M.D., Defendant-Appellee.
 No. 94-8105.
 United States Court of Appeals, Tenth Circuit.
 Oct. 28, 1996.
 
 Before BRISCOE, HOLLOWAY and MURPHY, Circuit Judges.
 ORDER AND JUDGMENT*
 HOLLOWAY, Circuit Judge.
 
 
 1
 Plaintiff Bonnie Wern appeals from the district court's judgment against her on her medical malpractice claim, asserting basically as error the denial of her motion for a new trial supported by several specific alleged errors. We have jurisdiction under 28 U.S.C. § 1291 over this timely filed appeal and affirm.
 
 
 2
 * The facts of this case are familiar to the parties and we recount them only as is necessary to understand this appeal. On May 5, 1991, Wern was traveling through Wyoming with her family when her car was involved in a rollover accident and she was ejected.[1] She suffered a broken neck and a severe compound fracture of her right wrist.
 
 
 3
 Defendant Dr. Meade Davis, III was the emergency room surgeon at the Memorial Hospital of Laramie County where Wern was taken. Dr. Davis operated on Wern's wrist. However, he missed diagnosing her broken neck. Upon finishing the operation, Davis left town for a scheduled business trip. Wern's broken neck was not diagnosed until three days later. As a result of her injuries, she has become permanently disabled and has had to give up her accounting business. Wern filed a medical malpractice suit in federal court in Wyoming against Davis and the Memorial Hospital of Laramie County, although she later dropped the hospital from the suit. Wern claimed that Davis fell below the proper standard of care in treating her shattered wrist and in failing to diagnose her broken neck.
 
 
 4
 After she had rested her case in chief at trial, Wern discovered that a medical X-ray technician named Dave Clark had been present at the operation on her wrist and that he could testify that Dr. Davis did not appear to know how to use a C-arm X-ray machine. Clark was not identified during discovery by Dr. Davis or by the hospital prior to its dismissal. The district court allowed Wern to present Clark as a witness during rebuttal, but restricted his testimony to his perception of Dr. Davis's demeanor during the operation.
 
 
 5
 In his defense, Dr. Davis presented testimony that Dr. Davis's delay in diagnosing Wern's neck fracture did not make any significant difference in the outcome of Wern's ultimate recovery. The jury returned a verdict in favor of Dr. Davis. Wern moved for a new trial, alleging substantially the same grounds as are presented here on appeal. Wern appeals from the judgment entered against her after her motion was denied.
 
 II
 
 6
 Wern argues on appeal that: (1) Dr. Davis failed to identify X-ray technician Clark during discovery; (2) the district court erred in limiting the areas of testimony from Clark; (3) Jury Instruction No. 9B misstated the law; (4) the jury verdict was overwhelmingly contrary to the evidence; and (5) the district court erred in not restricting the testimony of Dr. Anthony Dwyer to the effects of Wern's injury (and not the cause of it). We address each contention in turn.
 
 
 7
 * Wern first argues that he was prejudiced by Dr. Davis's failure to identify Clark during discovery, as is required by Fed.R.Civ.P. 26(a)(1)(A) ("[A] party shall, without awaiting a discovery request, provide to other parties ... the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings"). She contends that this prejudice warranted a new trial.
 
 
 8
 We review the trial court's denial of a motion for a new trial for a clear abuse of discretion. United States v. Latimer, 780 F.2d 868, 870 (10th Cir.1985). As a threshold matter, we note that this issue was brought to the attention of the district court as part of the motion for a new trial. See App. at 414 ("6. Also attached hereto in support of Plaintiff's Motion is the Rule 26 disclosure of Memorial Hospital and Dr. Davis demonstrating Mr. Clark was not disclosed as a witness.").
 
 
 9
 It is undisputed that Clark was not identified during discovery. Wern then poses this issue as whether the nondisclosure was so prejudicial to her that a new trial is warranted. Brief of Appellant at 19. Such misconduct of a party or counsel justifies a new trial where that misconduct actually prejudices the adverse party. Ryder v. City of Topeka, 814 F.2d 1412, 1426 (10th Cir.1987). As we have noted, "[a] new trial is not to be granted simply as a punitive measure to punish the misconduct of counsel." Id. at 1425.
 
 
 10
 On this record, Wern falls short of establishing actual prejudice. Wern was not denied the use at trial of the evidence that she claims was improperly withheld during discovery. During rebuttal she was able to present the portions of Clark's testimony which the judge held permissible.[2] See Aple. Supp.App. at 112-25 (transcript of Clark's testimony). That the district judge prevented Clark from testifying as to the correctness of Davis's use of the C-arm during Wern's case in chief does not establish error for the purpose of a new trial. As we explain below, the judge's ruling was based on Fed.R.Evid. 702 and the failure of the proffered testimony to qualify as proper expert testimony concerning the propriety of the surgeon's care, and we agree with that ruling of the trial judge. Thus, even if Clark had been identified during discovery, the district judge would undoubtedly have limited Clark's direct testimony under Rule 702, as he did when it was offered in rebuttal. Thus the delay in knowing about Clark's identity and his information was not actually prejudicial to Wern.
 
 
 11
 The remainder of Wern's asserted claim of prejudice consists of the fact that her experts could not rely on Clark's testimony in forming their opinions. This argument is likewise unavailing, as Wern could have recalled her experts during rebuttal after the introduction of Clark's testimony. See Ryder, 814 F.2d at 1426 (noting that plaintiff could have recalled a detective to the stand to impeach him with a late discovered inconsistent statement).[3] We therefore conclude that the district judge did not abuse his discretion in denying Wern's motion for a new trial with respect to the ground of alleged error resulting from the failure of Dr. Davis and his counsel to disclose Clark's identity during discovery.
 
 B
 
 12
 Next, Mrs. Wern claims there was error by the district judge in restricting and excluding material testimony by Dave Clark, the medical X-ray technician who had been present during the operation by Dr. Davis on Wern's wrist. Mrs. Wern contends that from a late night call during trial, following her discovery of Clark's identity, she learned that Dr. Davis failed to use the C-arm as testified to in court; that Davis was unable to use the equipment properly and he was agitated and irritated throughout the surgery. Wern says that when she attempted to call Clark to the stand during rebuttal, Dr. Davis objected to Clark's testimony because, inter alia, Clark was "rendering a layman's opinion on a medical procedure." Brief of Appellant at 23. Wern argues this rejection of Clark's competent and relevant testimony was error. Id. at 23.
 
 
 13
 The record of Dave Clark's rebuttal testimony shows these facts: Clark testified that he was a radiographic technologist at the United Medical Center. Aple. Supp.App. at 113. Basically such technologists take X-rays and fluoroscopy, which is like a moving picture with X-rays to help doctors determine and diagnose what's wrong with patients and to "help [doctors] form a plan of action basically ... [a]s treatment." Id. at 113-14. Clark had received training during a "26-month program out at L triple C for that." Id. at 114.
 
 
 14
 Clark explained that a C-arm is a portable unit of "a fluoro, which is more, again, like ... an X-ray is like a Polaroid, and fluoro is like using a video camera." Id. at 114. He said a C-arm is a machine that can be taken to another location instead of moving a full room with all of its equipment. It is usually only two pieces with monitors and an "image intensifier" which is the actual X-ray part of the machine that gives the information to the computer basically. Id. at 114. The reason the equipment is in a C shape is so that you can come over someone; as opposed to moving the person, you move the equipment. Id.
 
 
 15
 How the doctor uses the equipment depends on her or his choice. On that specific equipment there is a foot switch that turns the X-rays on. Id. at 115-16. In this case Dr. Davis was in charge of operating the foot switch, turning the radiation on and off. As for the manipulation and moving of the C-arm, the X-ray tech is responsible.
 
 
 16
 Clark said he remembered Mrs. Wern's case and her being in the operating room on May 5, 1991. He remembered Dr. Davis performing surgery on her wrist and that Clark was there to assist Dr. Davis. Clark may not have been there when Mrs. Wern came into the operating room or for the "initial scrubbing," but he was there for the pinning of the bone which Dr. Davis was working on. Id. at 116. Counsel for Mrs. Wern asked how Dr. Davis was then "reacting to this case" and Davis's counsel objected that this was coming close to matters which they agreed, and the judge had ordered, should not be raised until the judge authorized it. Id. at 116. The judge directed Wern's counsel to make an offer of proof.
 
 
 17
 Wern's counsel said Clark would testify that Dr. Davis was very upset: "he was ranting and raving at the aids and--to get this thing done ...," which counsel said was contrary to evidence that Dr. Davis was very careful. Further, Wern's counsel said Clark would testify that "Dr. Davis did not know how to run the C-arm, that he [Clark] had to assist him in how to operate that C-arm...." Id. at 117-18. Third, that in fact Clark had to give Dr. Davis instant interpretation of the films and, fourth, Dr. Davis had to drill a number of sites, remove pins, redrill sites and put in several pins and finally Davis "closed his surgery." Id. at 118.
 
 
 18
 The judge then said that the doctor had testified about drilling the pins and said you had to place various pins at various locations, which was normal. The judge ruled that:
 
 
 19
 I believe [comment by Clark on placing pins at various locations] would be the comment by a nonprofessional on a professional's activities. As to the other observations as to his impatience or whatever it was, I am inclined to think that's fair comment.
 
 
 20
 Id. at 118. The judge said the testimony of Clark (as thus limited) was proper rebuttal, but that the judge "was going to prohibit you from going into [Clark's] comments on what the doctor did in his surgery." Id. at 118.
 
 
 21
 Mrs. Wern's counsel clarified his offer of proof: "We're not going to ask [Clark] his opinion of surgery. He's just simply going to say that Davis was not using the equipment the way he was trained and he had to show the doctor how to use it." Id. at 119. An objection to this offer of proof was made that this again "touches upon [the doctor's] professional abilities...." The judge agreed, concluding:
 
 
 22
 I think the objection will be sustained, and I am going to prohibit that. We won't go into it....
 
 
 23
 * * *
 
 
 24
 You can have [Clark] testify to his observations of Dr. Davis's impatience or whatever it was there on that.
 
 
 25
 Id. at 119. The judge added that he would not permit Wern's counsel to ask Clark "what he observed about the machine, the C-arm...." He said "that's going to get into the prohibited area of a nonprofessional commenting on the professional's activities." Id. at 120. Thus these portions of the offer of proof were rejected.
 
 
 26
 When the interrogation by Wern's counsel resumed, Clark was permitted to testify that Dr. Davis seemed agitated. He was upset with how things were being done. He was raising his voice to the people in the room, the "techs," and Dr. Davis was in a hurry to get the X-ray. He seemed agitated with the way the equipment was being set up. He seemed to be concerned with how much radiation was going to occur. Id. at 120-21.
 
 
 27
 We are persuaded there was no abuse of discretion by the trial judge in these evidentiary rulings. It is true that the scope of expert opinion is broad under Fed.R.Evid. 702.[4] Clark had expertise as a radiographic technologist, with both training and experience which qualified him to testify about the use and operation of the C-arm equipment. We do not read the record as showing a rejection by the judge of Clark as having no expertise or no qualifications to testify concerning the function, use and operation of equipment handled by a radiographic technologist.
 
 
 28
 From our review of this record of the offers of proof and the rulings made, we feel that the proposed testimony of Clark as proffered raised a close question about overlapping areas as to what was in the technician's field and what was purely within the ken of the medical specialist, here an orthopedic surgeon. We conclude that the scope of permissible testimony in this type of situation must be treated as a matter of sound discretion for the trial judge to exercise, after careful weighing of the qualifications of the witnesses and their areas of expertise involved. We are convinced that here the judge did not abuse that discretion in the latitude he permitted for Clark's testimony. After the offer of proof that Clark was "just simply going to say that Davis was not using the equipment the way he was trained and he had to show the doctor how to use it," Aple. Supp.App. at 110, the judge's agreement with Dr. Davis's objection that this "touches upon his professional abilities," and the judge's ruling that the objection will be sustained and such proof would be prohibited, id. at 110, were not an abuse of discretion. See Govin v. Hunter, 374 P.2d 421, 422 (Wyo.1962) (in malpractice action, plaintiff must prove, by evidence of competent experts, injury complained of was caused by negligence). See also Salem v. United States, 370 U.S. 31, 34 (1962) ("the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous"); Kloepfer v. Honda Motor Co., Ltd., 898 F.2d 1452, 1458 (10th Cir.1990) (same).
 
 C
 
 29
 Wern's third contention on appeal is that Jury Instruction No. 9B was contrary to Wyoming law and medical malpractice law in any jurisdiction, requiring reversal. That instruction stated:
 
 JURY INSTRUCTION NO. 9B
 
 30
 If from all of the evidence in this case, you believe that none of the parties or non-party actors in this case were negligent as defined in these Instructions and you believe that the injuries to the plaintiff were the result of an unavoidable medical procedure, your response to the request for the proportional amount of negligence of the parties and non-party actors should so indicate, and your special verdict may show 0% of negligence attributable to each party and/or non-party acotr [sic] as you see fit.
 
 
 31
 The term "unavoidable medical procedure" simply means a procedure in which there was no negligence by any of the parties or non-party actors which resulted in injuries to the plaintiff.
 
 
 32
 II App. at 373.
 
 
 33
 More specifically, Wern argues that contrary to what the instruction stated, the term "non-party actors" was not defined in any other instruction; that the instruction erroneously told the jurors that if they found that the surgery on Wern was an inevitable medical procedure, incapable of being prevented, the jury could excuse Dr. Davis's negligence; and that Instruction No. 9B was both contrary to medical negligence law and the facts here, being tantamount to the "best judgment and/or was error in judgment" instruction which was rejected in Kobos By and Through Kobos v. Everts, 768 P.2d 534 (Wyo.1989). Brief of Appellant at 28-30.
 
 
 34
 The standards by which we must judge these claims of error are well settled. We will reverse a judgment on such a challenge to a jury instruction only if we have substantial doubt that the entire set of instructions guided the jury properly, Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1517 (10th Cir.1995), and only if the error in the jury instruction is prejudicial upon review of the record as a whole. Rios v. Bigler, 67 F.3d 1543, 1549 (10th Cir.1995).
 
 
 35
 We are not persuaded that Instruction No. 9B erroneously told the jury that if they found that the surgery on Wern was an inevitable medical procedure, it could excuse Dr. Davis's negligence. Instruction No. 9B applied if and only if the jury had concluded that Dr. Davis was not negligent. This interpretation is clear from the instruction's requirement that the jury find two ultimate facts before filling out the special verdict--(1) no negligence on the part of any of the parties; and (2) Wern's injuries were the result of an unavoidable medical procedure. Since Instruction No. 9B would only come into play if the jury found that Dr. Davis was not negligent, any ambiguity or error connected with the term "unavoidable medical procedure" was not prejudicial. Cf. City of Wichita, Kansas v. U.S. Gypsum Co., 72 F.3d 1491, 1495 (10th Cir.1996) (where jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction).
 
 
 36
 Moreover, Instruction No. 9B did not provide a so-called "honest error in judgment" defense. Therefore the Wyoming law laid down in Kobos, 768 P.2d at 538-39, was not violated.
 
 
 37
 In sum, we are convinced that Wern has not demonstrated that Instruction No. 9B was prejudicially erroneous in light of the charge as a whole.
 
 D
 
 38
 Wern next challenges the jury verdict as contrary to the evidence. She contends that the jury's finding of no negligence on the part of the non-party driver who allegedly ran her off the road is inconsistent with her uncontroverted testimony. And thus Wern says that the confusion and prejudicial nature of Instruction No. 9B cannot be denied. Brief of Appellant at 34. Our review of a challenge to the jury verdict is deferential, and we will reverse only if the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. Karns v. Emerson Electric Co., 817 F.2d 1452, 1456 (10th Cir.1987).
 
 
 39
 First, we fail to see the significance of the jury's finding of no negligence on the part of the driver who allegedly ran her off the road, as the driver is not a party to this lawsuit. Wern argues that the finding indicates that the jury was confused by Instruction No. 9B. For the reasons discussed above, we find this argument unpersuasive. To reach the special verdict results that they did in finding no negligence by any parties, the jurors initially had to find none of the parties or non-parties were negligent.
 
 
 40
 In any event, we cannot say that the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. The parties stipulated that Wern "was involved in a single car roll-over automobile accident and suffered injury." II App. at 362 (Jury Instruction No. 3). We need not determine whether the stipulation conclusively resolves the factual issue whether the non-party driver was negligent against Wern or merely provides evidence that the non-party driver was negligent, see United States v. Benally, 756 F.2d 773, 778 (10th Cir.1985) ("The jury was free to consider the stipulated testimony and other evidence."), because even under the latter analysis, the stipulation was sufficient for a rational jury to reach its ultimate finding. For that reason, we reject this contention.
 
 E
 
 41
 Finally, Wern contends that the district court erred in admitting the videotaped deposition of Dr. Dwyer with respect to his medical expert opinion as to whether the initial failure to diagnose Wern's broken neck caused partial paralysis in her hand. We review this ruling for abuse of discretion, Orjias v. Stevenson, 31 F.3d 995, 999 (10th Cir.1994), applying the four-factor test set forth in Smith v. Ford Motor Co., 626 F.2d 784 (10th Cir.1984). The four factors spelled out in Smith are: (1) the prejudice or surprise in fact of the party against whom the testimony is allowed; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case; and (4) bad faith or willfulness in failing to comply with the district court's pre-trial order. Id. at 797.
 
 
 42
 Wern asserts that she did not expect causation testimony from Dr. Dwyer, as he had not been designated as a neurological expert in the Rule 26(g)(2) submission and as his expert report was devoid of any opinion regarding medical causation. However, the record does not support Wern's position. First, we note that Dr. Dwyer was designated as an Independent Medical and Rehabilitation Examiner ("I.M.E."). In his Rule 26(g)(2) submission, Dr. Davis identified three areas of I.M.E. testimony, one of which corresponded to Dr. Dwyer's field and was labeled "Orthopedic Surgeon." Dr. Davis noted that "[t]he examiner may also be called to testify regarding the relative causative factors of Plaintiff's current symptoms." I App. at 83. In addition, Dr. Dwyer's report, following his examination of Wern, stated "In summary, I do not consider that there is any relationship between the disability related to the right hand and wrist injury and that of the cervical injury." II App. at 444.[5] Thus, while Wern may in fact have been surprised at Dr. Dwyer's testimony on causation, she should have anticipated it.
 
 
 43
 The situation in this case is thus different from that present in Smith. In Smith, the pre-trial designation of the witness was that he would "testify as to his medical treatment of the Plaintiff, as well as to his prognosis." 626 F.2d at 796. We concluded that this description failed to alert the defense to the fact that the witness intended to offer medical testimony regarding the cause of the plaintiff's injuries, a defect that was not remedied by the local custom of allowing physicians to testify as to the cause of injuries. Id. at 797. Thus, a party could not be expected to infer the scope of testimony from a generalized description. In this case, however, there was no need for inference because Dr. Davis stated explicitly that the orthopedic surgeon might testify regarding causation.
 
 
 44
 The second Smith factor also weighs against Wern. Assuming that Wern was in fact prejudiced by the admission of Dr. Dwyer's testimony on causation, she could have attempted to cure the prejudice by deposing Dwyer again during the four business days before the trial began. If, as she suggests, four business days was not enough time to do so, she could have sought a continuance from the district court. Because Wern failed to take any of these steps, there is nothing in the record from which we can conclude that she was unable to cure the prejudice. See MacCuish v. United States, 844 F.2d 733, 737 (10th Cir.1988) (noting that the plaintiff, who claimed to be prejudiced by the admission of testimony from a late-disclosed witness, "made no motion for a continuance at that time nor [did] she demonstrate other efforts to cure any alleged prejudice, although she could have made such efforts"); Marino v. Otis Engineering Corp., 839 F.2d 1404, 1411-12 (10th Cir.1988) (holding that failure to attempt to cure the prejudice results in waiver of the ground for appeal).
 
 
 45
 As to the third factor, there is no indication that allowing Dr. Dwyer to testify regarding causation disrupted the trial proceedings. Dwyer had already been noticed for trial as an expert. I App. at 83, 141. While Dr. Dwyer's schedule might have necessitated a longer continuance in order to depose him, the record is devoid of any showing to this effect. Cf. Smith, 626 F.2d at 799 (noting that the scheduled departure of the late disclosed witness, combined with the fact that disclosure occurred in the midst of trial and the "crucial nature of the testimony," required a longer continuance than that granted by the district court).
 
 
 46
 Finally, we are unable to conclude from the record that Dr. Davis acted in bad faith in this regard. As noted earlier, we believe that the pre-trial designation of Dr.. Dwyer was sufficient to place Wern on notice that causation testimony might be forthcoming.
 
 
 47
 Based on our application of Smith, therefore, we cannot say that the district court abused its discretion in admitting Dr. Dwyer's causation testimony.
 
 
 48
 AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of the law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [1]
 Wern claims that an unidentified driver caused the accident by running her off the road. At trial, however, the parties stipulated merely that she had been involved in a single car rollover accident and suffered injury. II App. at 362
 
 
 [2]
 As discussed below, the judge limited substantially the testimony of Clark on the ground that much of it did not properly qualify as opinion testimony because it was from a nonprofessional, vis-a-vis the orthopedic surgeon, concerning the professional standard of conduct by such a surgeon, as permitted under Fed.R.Evid. 702
 
 
 [3]
 Wern argues that recalling her experts was not feasible, as their credibilities would have suffered if they were to present new theories of liability on rebuttal. Nevertheless, the fact that presentation of her case could be stronger on retrial is not grounds for a new trial. See Ryder, 814 F.2d at 1426 (citing 6A J. Moore, Moore's Federal Practice p 59.08, at 59-96 (2d ed.1986)). Wern must show actual prejudice, and having failed to recall her experts, she cannot do so on this record
 
 
 [4]
 The Rule provides:
 Rule 702. Testimony by Experts
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 [5]
 Wern contends that she did not receive a missing page of Dr. Dwyer's report until the day of Dwyer's videotaped deposition. However, that missing page was page 3, whereas the page with Dwyer's medical opinion as to causation was page 8. Thus, this contention is not relevant to the present discussion