996 F.2d 1228
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald Dion KUNEKI, Defendant-Appellant.
 No. 91-30388.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1993.
Decided June 15, 1993.
 
 Before WRIGHT, FARRIS and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Gerald Dion Kuneki appeals his jury conviction for voluntary manslaughter in violation of 18 U.S.C. § 1112. We have jurisdiction over the timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 DISCUSSION
 
 3
 Kuneki argues that the district court erred in limiting his opportunity to testify in his own defense. Kuneki had testified on June 6, 1991 that he "pulled the gun up and the trigger went off." The court was not inclined to give a self-defense instruction. Four days later, Kuneki's attorney reopened the defense and Kuneki returned to the stand. This time, however, Kuneki remembered intentionally shooting the victim because he was "scared" of him.
 
 
 4
 On cross-examination, the prosecutor exposed the apparent inconsistency in Kuneki's versions of the shooting. On redirect examination, Kuneki's attorney asked him whether he was not changing his position from his June 6, 1991 testimony. The court interrupted: "No, I think that the jury should--I don't think he should make an assessment of that, Counsel. I think the jury should assess his testimony." No objection was raised by Kuneki's attorney and the defense rested. Kuneki now contends that this ruling deprived him of his right to testify. We reject the contention.
 
 
 5
 Kuneki failed to raise this issue before the district judge. We therefore review for plain error. See Fed.R.Evid. 103(d); United States v. Dischner, 960 F.2d 870, 882-83 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993). "A plain error is a highly prejudicial error affecting substantial rights." Dischner, 960 F.2d at 883 (quoting United States v. Giese, 597 F.2d 1170, 1199 (9th Cir.), cert. denied, 444 U.S. 979 (1979)).
 
 
 6
 Kuneki had ample opportunity to testify under extensive direct and cross examinations spanning two days and over one hundred pages of transcript. The district court generously permitted Kuneki to reopen his case to try to establish a basis for a self-defense instruction. See United States v. Kelm, 897 F.2d 1319, 1323 (9th Cir.1987) ("The court may refuse to permit an accused to reopen his case, and present additional evidence, where there is insufficient reason for the accused's failure to offer evidence at the proper time."). But Kuneki was not entitled to assess, evaluate, weigh and reconcile his prior testimony. That was jury work. United States v. Brumel-Alvarez, 1993 WL 122573,* 11 (9th Cir. Apr. 22, 1993). There was no plain error.
 
 
 7
 Kuneki next argues that the government's misplacement of the victim's shirt requires reversal. Kuneki suggests that the possible existence of unburned powder on the victim's shirt would have corroborated his theory of self-defense by establishing the victim's proximity to Kuneki at the time of the shooting. We reject the argument.
 
 
 8
 Kuneki must show that the loss of evidence was a result of the government's bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). The presence or absence of bad faith turns on the government's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. United States v. Cooper, 983 F.2d 928, 931 (9th Cir.1993).
 
 
 9
 There is no evidence that the government acted in bad faith in misplacing the victim's shirt. The government thought the evidence to be inculpatory, rather than exculpatory. The autopsy surgeon detected no thermal damage to the victim's shirt, indicating that the victim was no closer than two feet from the barrel when shot. The government had every incentive to preserve this evidence.
 
 
 10
 Finally, Kuneki argues that the district court erred in failing to instruct the jury on involuntary manslaughter and self-defense. The argument lacks merit.
 
 
 11
 "A defendant is entitled to an instruction on his theory of the case if the record contains evidentiary support for the theory and the theory is supported by law." United States v. Lesina, 833 F.2d 156, 160 (9th Cir.1987). An involuntary manslaughter instruction can be consistent with the defendant's claim of self-defense. United States v. Manuel, 706 F.2d 908, 915 (1983). To warrant both involuntary manslaughter and self-defense instructions, the evidence must support a finding that the defendant attempted to use non-deadly force, but did so in a criminally negligent manner with death resulting. Id. A defendant is not entitled to an involuntary manslaughter instruction if he admits that he intentionally shot the victim in self-defense. United States v. Browner, 889 F.2d 549, 555 (5th Cir.1989); United States v. Manuel, 706 F.2d 908, 915 (9th Cir.1983); United States v. Skinner, 667 F.2d 1306, 1309-10 (9th Cir.1982), cert. denied, 463 F.2d 1229 (1983).
 
 
 12
 Kuneki first testified that he was scared, pulled the gun up, and the trigger went off. He later clarified his testimony by admitting that he intentionally shot the victim because he was scared of him. Kuneki's voluntary intoxication is irrelevant. Involuntary manslaughter is a general rather than a specific intent crime, and voluntary intoxication is not a defense to general intent crimes. United States v. Bald Eagle, 849 F.2d 361, 362 (8th Cir.1988). No rational jury could have found Kuneki guilty of involuntary manslaughter.
 
 
 13
 Nor was Kuneki entitled to a self-defense instruction. The aggressor in a conflict culminating in death cannot invoke the necessities of self-defense. United States v. Wagner, 834 F.2d 1474, 1486 (9th Cir.1987). There was some suggestion that Kuneki was placed in a headlock and escorted out the back door, but Kuneki left without further altercation. He went to his cousin's house and asked him for help in removing the victim from the house. His cousin didn't want to get involved. Kuneki then returned to the house after all danger had passed, went into his bedroom, retrieved his .22 magnum rifle, loaded the gun, and confronted the victim, who was seated watching television. Kuneki claims he shot the victim only after the victim started stepping toward him.
 
 
 14
 Kuneki was not entitled to return to the house and employ deadly force to remove the victim. See Wagner, 834 F.2d at 1486 (holding that victim's alleged attempt to grab a hot water pitcher did not justify defendant's pulling a knife after all danger had passed). Any danger Kuneki may have faced during the initial "headlock" altercation had passed. Kuneki was then the aggressor. No reasonable jury could have found that Kuneki shot the victim in self-defense. The district court properly declined to give a self-defense instruction.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3