**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>RUDY MARTIN GARCIA,<br>*Defendant-Appellant*. | No. 11-30348<br><br>D.C. No.<br>2:10-cr-00001-<br>EFS-1<br><br>ORDER AND<br>AMENDED OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Edward F. Shea, District Judge, Presiding

Argued and Submitted
November 9, 2012—Seattle, Washington

Filed July 19, 2013
Amended August 13, 2013

Before: William A. Fletcher and Raymond C. Fisher,
Circuit Judges, and Gordon J. Quist, Senior District Judge.[*]

Order;
Opinion by Judge W. Fletcher

---

[*] The Honorable Gordon J. Quist, Senior United States District Judge for the Western District of Michigan, sitting by designation.

## SUMMARY[**]

### Criminal Law

Reversing a conviction for involuntary manslaughter, the panel held that the version of the Ninth Circuit model jury instruction given by the district court was improper because it did not require the jury to find that the defendant acted with gross negligence – that is, "with wanton or reckless disregard for human life."

The panel held that the instructional error was not harmless. The panel also held that the district court should have admitted the defendant's testimony about the victim's prior violent acts and should have admitted, as evidence impeaching the testimony of witnesses who had testified that they had never seen the victim with a firearm, photographs that had been posted on the victim's MySpace page.

### COUNSEL

Peter S. Schweda (argued), Waldo, Schweda, Montgomery, P.S., Spokane, Washington, for Defendant-Appellant.

Matthew F. Duggan (argued), Assistant United States Attorney, Spokane, Washington, for Plaintiff-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

This court's opinion, filed July 19, 2013, is hereby amended as follows:

At slip opinion page 16–17, delete the following sentence: <We held in both cases that evidence of prior violent acts of the victim that were known to the defendants should have been admitted. *James*, 169 F.3d at 1214–15; *Saenz*, 179 F.3d at 688–89.>

Replace that sentence with the following paragraph:

> <In *James*, the defendant had been allowed to testify about prior violent conduct by the victim of which she had been aware. The dispute on appeal was whether the defendant could reinforce her testimony by introducing court documents, a presentence report, and police reports describing the victim's prior conduct. *James*, 169 F.3d at 1212–13. We held that the district court had abused its discretion in excluding that evidence. *Id.* at 1214–15. In *Saenz*, the district court held as a matter of law that the defendant could not testify about prior violent acts by the victim of which he had been aware. *Saenz*, 179 F.3d at 688. We reversed based on *James*. We wrote, "[W]e assumed [in *James*] that, in a self-defense case, a defendant may show her state of mind at the time of an attack by testifying that she knew about a victim's past acts of violence." *Id.* at 689.>

**OPINION**

W. FLETCHER, Circuit Judge:

Rudy Martin Garcia was tried for first-degree murder after he shot David McCraigie. The jury was instructed on the elements of first- and second-degree murder and of voluntary and involuntary manslaughter. The jury convicted Garcia of involuntary manslaughter and otherwise acquitted him. Garcia appeals his conviction. He contends that the version of the Ninth Circuit model jury instruction for involuntary manslaughter given by the district court was defective in that it failed to tell the jury that "gross negligence," defined as "wanton or reckless disregard for human life," was required for a conviction. We agree that the jury instruction allowed the jury to convict Garcia without finding an essential element of involuntary manslaughter. We therefore reverse Garcia's conviction.

## I. Background

Garcia shot McCraigie on the Colville Indian Reservation in eastern Washington during the evening of November 4, 2009. Garcia and McCraigie had been friends since childhood. Garcia and another friend had been drinking at Garcia's apartment, planning to go hunting the next day, when they ran out of beer. They drove Garcia's Jeep two blocks to the McCraigie house where a drinking party was in progress. An altercation between Garcia and McCraigie began inside the house and spilled out onto the sidewalk. A point-blank shot from Garcia's hunting rifle seriously wounded McCraigie. McCraigie died a few days later.

## A.  Evidence Admitted at Trial

The prosecution and defense presented starkly different versions of the events leading up to the shooting and of the shooting itself.  The prosecution version was that after the fight spilled out onto the sidewalk, McCraigie chased Garcia from the property.  Garcia then went to his apartment, retrieved his hunting rifle, returned to the house, and intentionally shot McCraigie.  One prosecution witness testified that he heard Garcia say he was going to get his gun. Four prosecution witnesses reported hearing from someone else that Garcia had gone to get a gun.  Two prosecution witnesses reported seeing McCraigie grab the barrel of Garcia's rifle.  Two other prosecution witnesses did not see the shot that hit McCraigie.  None of the prosecution witnesses reported seeing a gun in McCraigie's hand that night.  Three of the prosecution witnesses testified that they had never seen McCraigie with a firearm.

The defense version was that Garcia had acted in self-defense and that the shooting itself was an accident.  Garcia testified that McCraigie and two others at the party started a fight with him.  He testified that he had seen McCraigie with a pistol earlier that night.  He testified further that McCraigie tried to hit him on the head with the pistol.  He reported being chased and pushed from the house.

Garcia testified that he ran to his car and got in, but his girlfriend had taken his keys.  He then grabbed his hunting rifle from the back seat and got out of the car.  McCraigie kept coming toward him.  Garcia testified that he backed up and fired a warning shot in the air.  When they were about six feet apart, McCraigie ran at him.  Garcia testified that he "flinch[ed] up," expecting a punch, but McCraigie grabbed

the barrel of the rifle. There was a struggle, and the gun went off, inflicting the wound that eventually killed McCraigie.

Jordan Lynn, Garcia's girlfriend, testified that McCraigie and two others were beating up Garcia, and that she saw McCraigie with something in his hand that she thought was a gun. She testified that she saw McCraigie grab the rifle barrel and that the rifle then discharged. She also testified seeing one of the prosecution witnesses pick something up from beside McCraigie after he was shot.

The defense introduced text messages sent by one of the prosecution witnesses immediately after the shooting. Unbeknownst to the witness, he had mistakenly sent his texts to a stranger, a fourteen-year old girl. The girl responded several times before revealing that she was not the intended recipient. The texts read, in part:

> Witness: Yea bro at grandpa waynes papa called out beno n that bitch n got a shotti and pops got his pis but by the time we reached the frnt porch he got shot

> Response: when did this happen?

> Witness: I grabbd bros pist but when I saw beanz dip down the alley I grabd bros wep n followd n had it pointed at the end of the alley bitch was gone

McCraigie's nickname was "Poppa" or "Pop," and Garcia's nickname was "Beno" or "Beanz." These text messages thus lent support to the defense's theory that McCraigie had his own gun during the altercation.

## B.  Excluded Evidence

Defense counsel elicited testimony from several witnesses that McCraigie had a reputation for fighting and being "rowdy" when he drank.  When defense counsel tried to ask Garcia about specific prior acts of violence that McCraigie had committed, the court prevented Garcia from answering. Had he been permitted to testify, Garcia would have testified to three prior incidents involving McCraigie, each of which was known to Garcia before the night of the shooting: (1) in another incident at the McCraigie house, a group of people including McCraigie beat someone so severely that the victim suffered permanent brain damage; (2) McCraigie shot someone after starting an argument, but another person took the blame; and (3) McCraigie once "took a burning board from a fire and assaulted and burned a person of Hispanic heritage."   The court also prevented Jordan Lynn from describing McCraigie's prior violent acts.  Lynn's testimony would have been consistent with Garcia's.

Defense counsel also tried to introduce three photographs from McCraigie's public MySpace social networking page. All three photographs showed McCraigie holding a sawed-off shotgun.  Garcia tried to introduce the photographs as direct evidence, but the district court ruled they were unduly prejudicial and excluded them.  Garcia later tried to introduce the photographs as impeachment evidence against prosecution witnesses who testified that they had never seen McCraigie with a firearm.  The district court again excluded them.

## C. Jury Instruction

The district court instructed the jury on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. Garcia submitted a proposed involuntary manslaughter instruction that included as its first element that "the defendant committed an act, with wonton [sic] or reckless disregard for human life, which might produce death." The trial court rejected this instruction, instead using a version of the Ninth Circuit model instruction that read, with respect to that element, that "the Defendant committed an act, done either in an unlawful manner or with wanton or reckless disregard for human life, which might produce death."[1]

---

[1] The jury instruction given for involuntary manslaughter listed the following elements:

> [T]he Government must prove each of the following elements beyond a reasonable doubt:

> First, the Defendant committed an act, done either in an unlawful manner or with wanton or reckless disregard for human life, which might produce death;

> Second, the Defendant's act was the proximate cause of David McCraigie's death;

> Third, the killing was unlawful;

> Fourth, the Defendant either knew that such conduct was a threat to the lives of others or knew of circumstances that would reasonably cause the Defendant to foresee that such conduct might be a threat to the lives of others;

During deliberation, the jury sent out a note asking, "Can we ask for more definition on all counts including 1st Degree, 2nd Degree, voluntary, and involuntary manslaughter." The court responded, "While you can ask for more definition, the instructions you have been given are the standard instructions for a case of this kind."

## D. Verdict and Appeal

The jury acquitted Garcia of first- and second-degree murder and voluntary manslaughter, but convicted him of involuntary manslaughter. Garcia appealed, challenging the jury instruction, the exclusion of evidence by the court, and the length of his sentence.

## II. Standard of Review

When a party properly objects to a jury instruction, we review de novo whether the instructions given "accurately describe[] the elements of the charged crime." *United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007) (en banc). Harmless errors are not reversible. *United States v. Thongsy*, 577 F.3d 1036, 1040 (9th Cir. 2009).

We review de novo the district court's interpretation of the Federal Rules of Evidence. *United States v. Saenz*, 179 F.3d 686, 688 (9th Cir. 1999). We review exclusion of

---

Fifth, the killing occurred within the boundaries of the Colville Indian Reservation;

Sixth, the Defendant is Indian; and

Seventh, the Defendant did not act in self-defense.

evidence under Rule 403 for an abuse of discretion. *United States v. James*, 169 F.3d 1210, 1214–15 (9th Cir. 1999).

### III.  Discussion

### A.  Jury Instruction

The statute of conviction, 18 U.S.C. § 1112(a), defines involuntary manslaughter as follows:

> Manslaughter is the unlawful killing of a human being without malice.  It is of two kinds: . . . Involuntary — In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death.

Significant case law in our circuit and others provides a gloss on the statutory text.

We have consistently held that involuntary manslaughter requires proof beyond a reasonable doubt that the defendant acted with gross negligence.  In *United States v. Keith*, 605 F.2d 462 (9th Cir. 1979), we held that an involuntary manslaughter conviction requires both:

> (1) that the defendant acted with "gross negligence," defined as "wanton or reckless disregard for human life;" *and* (2) that the defendant had actual knowledge that his conduct was a threat to the lives of others, . . . or had knowledge of such circumstances as could reasonably be said to have made

foreseeable to him the peril to which his acts might subject others.

*Id.* at 463 (emphasis added) (quoting *United States v. Escamilla*, 467 F.2d 341, 347 (4th Cir. 1972)); *see also United States v. Shortman*, 91 F.3d 80, 81 (9th Cir. 1996) ("It is well-settled that 'gross negligence' is an element of involuntary manslaughter under § 1112."); *United States v. Crowe*, 563 F.3d 969, 973 (9th Cir. 2009) (quoting *Keith*). Garcia argues that the instruction given in his case allowed the jury to convict him of involuntary manslaughter without a finding of gross negligence. We agree.

Ninth Circuit Model Criminal Jury Instruction No. 8.110 provides in full:

The defendant is charged in [Count ___ of] the indictment with involuntary manslaughter in violation of Section 1112 of Title 18 of the United States Code. [Involuntary manslaughter is the unlawful killing of a human being without malice aforethought and without an intent to kill.] In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

*First, [the defendant committed an unlawful act not amounting to a felony,] [or] [committed a lawful act, done either in an unlawful manner or with wanton or reckless disregard for human life,] which might produce death;*

Second, the defendant's act was the proximate cause of the death of the victim. A proximate cause is one that played a substantial part in bringing about the death, so that the death was the direct result or a reasonably probable consequence of the defendant's act;

Third, the killing was unlawful;

Fourth, the defendant either knew that such conduct was a threat to the lives of others or knew of circumstances that would reasonably cause the defendant to foresee that such conduct might be a threat to the lives of others; and

Fifth, the killing occurred at [specify place of federal jurisdiction].

(Emphasis added.)  The Comment to this model instruction provides, with respect to the first element of the instruction: "Use either or both of the bracketed phrases in the first element depending on the allegation in the indictment."

The district court used the second bracketed phrase of the first element.  It instructed the jury that the government must prove beyond a reasonable doubt as follows:  "First, the Defendant committed an act, done either in an unlawful manner or with wanton or reckless disregard for human life, which might produce death."  The district court omitted the word "lawful" from the model instruction's phrase "committed a lawful act," but we do not regard that omission as having had a material adverse effect on Garcia.  No other

instruction required the jury to find that Garcia had acted with "gross negligence."

The model instruction, as given by the district court, did not properly instruct the jury. The instruction allowed the jury to convict Garcia of involuntary manslaughter in either of two ways: (1) if it found that Garcia "committed an act, done . . . in an unlawful manner . . . , which might produce death," or (2) if it found that Garcia "committed an act, done . . . with wanton or reckless disregard for human life, which might produce death." The second alternative adequately required the jury to find that Garcia acted with gross negligence. *See Keith*, 605 F.2d at 463 ("[T]he defendant acted with 'gross negligence,' defined as 'wanton or reckless disregard for human life[.]'"). The first alternative, however, did not. It required only that the defendant have acted "in an unlawful manner" and that the act "might produce death."

There is no way that the jury could have known from the instruction that an act committed "in an unlawful manner" had to be an act committed with "gross negligence" — that is, committed "with wanton or reckless disregard for human life." Indeed, given that this critical phrase — "with wanton or reckless disregard for human life" — was included in the second alternative but omitted from the first, the jury was encouraged to think that the first alternative did not require such a finding.

We have no case law in the circuit specifically addressing the problem created by the "in an unlawful manner" language in § 1112(a). However, the Eighth Circuit, addressing an almost identical instruction, has expressed concern with the formulation. *United States v. McMillan*, 820 F.2d 251, 255 (8th Cir. 1987). The *McMillan* court confronted an

instruction requiring the jury to find "that the Defendant caused the victim's death as a result of conduct that was unlawful *or* that exhibited a conscious indifference or reckless disregard for human life." *Id.* The *McMillan* court noted that if this sentence were the sole instruction on gross negligence, "it would appear that part of the government's burden of proof had been removed." *Id.* at 256. However, because additional instruction and argument clarified the standard in that case, the court found no error. *Id.* Here, by contrast, no subsequent instruction or argument informed the jury that gross negligence is an essential element of involuntary manslaughter.

The government makes two arguments in favor of the version of the model instruction that was given. We disagree with both arguments.

First, the government argues that the instruction is proper because it tracks the statute of conviction. Even setting aside the differences between the instruction and the statute, this argument fails. Although an instruction tracking a statute is generally not erroneous, *see Johnson v. United States*, 270 F.2d 721, 725 (9th Cir. 1959), statutory language cannot be used in an instruction if that language omits a required element of the crime. *See, e.g.*, *Shortman*, 91 F.3d at 82 (rejecting use of statutory "without due caution" language in instruction because it was "a far less onerous standard than 'gross negligence'"); *Keith*, 605 F.2d at 464 (finding that a grand jury indictment tracking the language of § 1112 "did not charge two essential elements").

Second, the government argues that part four of the given instruction includes the gross negligence element. Part four required the jury to find that "the Defendant either knew that

[his] conduct was a threat to the lives of others or knew of circumstances that would reasonably cause the Defendant to foresee that such conduct might be a threat to the lives of others." This part of the instruction required only that Garcia knew of risk caused by his conduct.  Degree of risk is different from knowledge of risk.  Gross negligence is addressed to the degree of risk rather than mere knowledge of risk.  In *Keith*, we held that gross negligence and knowledge of risk are *both* required elements.  *Keith*, 605 F.2d at 463.

Because the instruction did not require the jury to find that Garcia acted with gross negligence — that is, "with wanton or reckless disregard for human life" — we hold that it was improper.  We have in past cases held jury instructions improper even when they accorded with model instructions.  Indeed, we have required changes to other parts of this very model instruction.  *See United States v. Paul*, 37 F.3d 496, 500–01 (9th Cir. 1994) (holding that the model instruction did not adequately distinguish between the mental states required for voluntary and involuntary manslaughter); *United States v. Main*, 113 F.3d 1046, 1050 (9th Cir. 1997) (holding that the model instruction failed to adequately instruct on proximate cause); *see also United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004).[2]

---

[2] As noted above, Ninth Circuit Model Criminal Jury Instruction No. 8.110 provides, with respect to the first required element for involuntary manslaughter:

> First, [1] [the defendant committed an unlawful act not amounting to a felony,] [or] [2] [committed a lawful act, done either in an unlawful manner or with wanton or reckless disregard for human life,] which might produce death.

An improper jury instruction does not require reversal if the error is harmless. An error in describing an element of the offense is harmless only if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18 (1999); *see also Thongsy*, 577 F.3d at 1043. We consider whether the element at issue is sufficiently explained, given the totality of the instructions. *United States v. Lesina*, 833 F.2d 156, 160 (9th Cir. 1987) ("Viewing the instructions as a whole and in the context of the entire trial, we conclude that the omission requires reversal.") (internal citation omitted); *see also McMillan*, 820 F.2d at 256–57 (finding instructional error to be harmless where at least two other instructions properly set out the gross negligence standard). Counsel's arguments to the jury are relevant in assessing harmlessness. *McMillan*, 820 F.2d at 256 (both counsel mentioned gross negligence as an element of involuntary manslaughter in their opening statements).

We hold that the instructional error was not harmless. Garcia's defense hinged on self-defense and accident, focusing on the degree of risk that his actions posed. The use of the appropriate negligence standard was thus of central importance. The instruction was readily susceptible to a reading that did not require gross negligence. When the jury expressed confusion by sending out a note asking "for more definition" of all the counts, including involuntary

---

(Bracketed numbers added to indicate alternative instructions.) We hold that alternative [2], which was given by the court, was improper because it failed to inform the jury that gross negligence is required for conviction. Even though alternative [1] was not given by the court and the issue of its propriety is therefore not before us, we note that it, like alternative [2], does not inform the jury that gross negligence is required for conviction.

manslaughter, the court merely referred it to the defective instructions previously given.  Gross negligence was not mentioned elsewhere in the instructions.  It is therefore not clear beyond a reasonable doubt that the jury would have convicted Garcia of involuntary manslaughter if properly instructed.

## B.  Excluded Evidence

Because we reverse Garcia's conviction based on the defective jury instruction, we need not reach the other issues presented on appeal.  We nonetheless address briefly the two evidentiary issues, given that they may arise again if Garcia is retried.

First, Garcia contends that the district court should have allowed him, or his girlfriend Jordan Lynn, to testify about McCraigie's prior violent acts.  Garcia argues that this testimony should have been admitted under *United States v. James*, 169 F.3d 1210 (9th Cir. 1999), and *United States v. Saenz*, 179 F.3d 686 (9th Cir. 1999), to show his state of mind — specifically, to show that he had good reason to fear McCraigie.  The district court held that the testimony was inadmissible under *United States v. Keiser*, 57 F.3d 847, 853 (9th Cir. 1995).

We agree with Garcia, at least with respect to his own proffered testimony.  The facts of *James* and *Saenz* are very similar to the facts in this case.  The defendants in both cases knew and feared the victim, as did Garcia; and the defendants in both cases argued self-defense, as did Garcia.  In *James*, the defendant had been allowed to testify about prior violent conduct by the victim of which she had been aware.  The dispute on appeal was whether the defendant could reinforce

her testimony by introducing court documents, a presentence report, and police reports describing the victim's prior conduct. *James*, 169 F.3d at 1212–13. We held that the district court had abused its discretion in excluding that evidence. *Id.* at 1214–15. In *Saenz*, the district court held as a matter of law that the defendant could not testify about prior violent acts by the victim of which he had been aware. *Saenz*, 179 F.3d at 688. We reversed based on *James*. We wrote, "[W]e assumed [in *James*] that, in a self-defense case, a defendant may show her state of mind at the time of an attack by testifying that she knew about a victim's past acts of violence." *Id.* at 689. The facts of *Keiser* are different. In that case, the defendant did not know of the prior violent acts by the victim — indeed, the victim's prior violent acts post-dated the crime — and those acts therefore could not have affected the defendant's state of mind. *See Keiser*, 57 F.3d at 853 ("Keiser makes no claim on appeal that the [victim's violent] incident . . . — which . . . occurred after the shooting — was relevant to his state of mind at the time of the shooting or the reasonableness of his belief that force in self-defense was necessary.").

Second, Garcia contends that he should have been allowed to introduce three photographs that had been posted on McCraigie's MySpace page. All three photographs show McCraigie holding a sawed-off shotgun. In two of them McCraigie or another person was wearing what appear to be gang-associated colors, and in two of them, McCraigie is drinking out of a bottle that may have contained alcohol. The district court excluded the photographs because they involved a different type of weapon and were unduly prejudicial.

We agree with Garcia that the district court should have admitted the photographs as impeachment evidence. Three

prosecution witnesses specifically testified that they had never seen McCraigie with a firearm: Keith McCraigie ("Q: [D]id you ever know him to have a firearm? A: No."); Alex McCraigie ("Q: How about with a firearm? A: No."); and Mariela Sanchez ("Q: Had you seen him with a gun at any time that evening? A: I never seen him with a gun my whole life knowing him."). Garcia's self-defense argument relied heavily on his testimony that McCraigie had a pistol, and the testimony of each of these witnesses, if believed, cast serious doubt on Garcia's testimony.

## Conclusion

Because the jury was not properly instructed that involuntary manslaughter requires finding gross negligence, we reverse Garcia's conviction for involuntary manslaughter.

**REVERSED.**