**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 12 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NYLE J. HOOPER, <br><br> Plaintiff - Appellant, <br><br> And <br><br> UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LOCKHEED MARTIN CORPORATION, <br><br> Defendant - Appellee. | No. 14-56192 <br><br> D.C. No. 2:08-cv-00561-BRO-PJW <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted February 1, 2016
Pasadena, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PAEZ and M. SMITH, Circuit Judges and SILVER,[**] Senior District Judge.

## I.    Introduction

This case is before us for a second time. In the prior appeal, we reversed the district court's summary judgment against Plaintiff Nyle J. Hooper as to one False Claims Act theory, affirmed the grant of summary judgment as to two other theories, and reversed the dismissal of Hooper's retaliation claim. *Hooper v. Lockheed Martin Corp.,* 688 F.3d 1037 (9th Cir. 2012) ("*Hooper I*"). On remand, the case proceeded to a six-day jury trial. The jury found for Defendant Lockheed Martin Corporation, and the court entered judgment against Hooper.

The facts of the case are familiar to the parties, and the background of the Air Force's Range Standardization and Automation (RSA) IIA project is set forth in our prior opinion. We therefore do not recite the facts here except as needed in our discussion of Hooper's arguments on appeal. Finding merit in none of those arguments, we affirm.

## II.    Jury Instruction 21 Was Not Erroneous

At trial, Hooper pursued a theory that the invoices submitted under the RSA IIA contract were fraudulent because Lockheed fraudulently underbid for the

---

[**]    The Honorable Roslyn O. Silver, Senior District Judge for the U.S. District Court for the District of Arizona, sitting by designation.

2

contract. "[F]alse estimates, defined to include fraudulent underbidding in which the bid is not what the defendant actually intends to charge, can be a source of liability under the FCA, assuming that the other elements of an FCA claim are met." *Hooper I*, 688 F.3d at 1049 (internal reference omitted). Thus, it was not necessary for Hooper to separately prove the falsity of each invoice, because "liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006).

In the Joint Pretrial Conference Order, Hooper stated that he intended to "introduce evidence that Defendant submitted approximately 1200 invoices for payment in the amount of $882,717,983." The jury instructions addressed these invoices. Instruction 21 stated: "If you find that Lockheed violated the False Claims Act, you must identify each specific, individual claim for payment—an invoice or other payment demand—that Mr. Hooper proved to constitute a false claim."

Hooper argues that the jury could have understood the instruction to require separate falsity in each invoice, instead of, in accordance with Hooper's theory, in the bid. However, Instruction 21 must be read in conjunction with all the

instructions. Instruction 14 set forth the elements of Hooper's underbidding claim. Additionally, instruction 15 specified that Hooper alleged that Lockheed submitted false claims for payment in the form of invoices. Hooper's proposed instruction 8, concerning penalties, would have instructed the jury to "decide how many such claims or statements, if any, were made or presented to the Government by Lockheed."

Instruction 21 did not erroneously instruct the jury that it needed to find independent falsehood in each invoice. It merely required the jury to identify each false invoice if it found liability. Because the jury found no False Claims Act violation, it left blank the later space on the verdict form for specifying the number of false claims.

Accordingly, Hooper has not shown that any instruction misstated the elements of his claim, or that the district court abused its discretion in formulating the instructions as a whole. *See Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1397 (9th Cir. 1996).

## III.    The Court Did Not Abuse its Discretion in Excluding Hooper's Expert Witness

Federal Rule of Civil Procedure 26(a)(2) requires a party who may present expert testimony at trial to provide a written report by the expert "at the times and

in the sequence that the court orders." Rule 37(c)(1) therefore "gives teeth" to the disclosure requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed," *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001), unless the failure to do so was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). We review the imposition of discovery sanctions for abuse of discretion. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997).

On remand, Hooper sought to reopen discovery, but the district court did so only for the retaliation claim, which had not been the subject of prior discovery, and declined to reopen discovery on the underbidding claim. Nonetheless, Hooper engaged an expert, Malek, to analyze software estimation files Lockheed had produced in discovery. Malek's report mostly related to underbidding, with only a few conclusory statements related to the retaliation claim. To the extent Hooper could have shown that his failure to timely produce Malek's report in the original discovery period was substantially justified or harmless, he should have moved the district court to modify the scheduling order under Rule 16. Instead, Hooper took the unsupportable position that the Malek report was really about his retaliation claim. In such circumstances, the district court did not abuse its discretion in striking the Malek report, thus precluding him from testifying at trial.

5

**IV.   The District Court Did Not Abuse its Discretion in Excluding Polliard**

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "We review exclusion of evidence under Rule 403 for an abuse of discretion." *United States v. Garcia*, 729 F.3d 1171, 1175 (9th Cir. 2013). District courts are not required to engage "in a mechanical recitation of Rule 403's formula on the record . . . [a]s long as it appears from the record as a whole that the trial judge adequately weighed the probative value and prejudicial effect of proffered evidence before its admission." *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1131 (9th Cir. 2010) (quoting *United States v. Sangrey*, 586 F.2d 1312, 1315 (9th Cir. 1978)) (alteration in original).

Polliard is a former Air Force officer and contractor. He helped test RSA IIA software from 1998 to 2000, and returned to manage the software in 2008. Polliard would have testified that Lockheed failed to meet the contract requirements because it provided woefully deficient software, which imposed significant direct costs on the Air Force. Hooper sought to use this testimony to prove that

"Lockheed's defective performance was the result of numerous cornercutting measures and inefficiencies caused by its underbidding of the contract."

The district court excluded Polliard's testimony entirely, except as potential rebuttal if Lockheed opened the door by introducing evidence of the high quality of its work. During trial, the court considered whether specific evidence opened the door to Polliard's testimony, and reminded Lockheed that if it chose to introduce evidence of the high quality of its work, that would open the door. Lockheed did not introduce such evidence, so Polliard did not testify.

In conditionally excluding Polliard's testimony, the district court reasoned that the poor quality of the software Lockheed provided would not be directly probative of "cutting corners and underbidding," and that the purported performance deficiencies were unfairly prejudicial. The Air Force itself acknowledged the "we're kind of developing it as we're going" nature of the RSA IIA contract, further disconnecting any performance deficiency from any underbids. Indeed, the Air Force eventually paid Lockheed approximately twice the initial bid. This further supports the district court's assessment of the disconnect between the underbidding theory and Polliard's performance testimony, because it is not as if Lockheed cut corners to deliver a product for the original bid

price. Further, Polliard had no knowledge of the details of the initial bid or contract, and was not involved in contract change proposals.

Thus, the district court did not abuse its discretion in considering, balancing, and ultimately excluding Polliard's testimony under Rule 403.

## V.    Conclusion

The judgment is AFFIRMED.