FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

JERRY NEHL BOYLAN,

*Defendant - Appellant.*

Nos. 24-3077
24-6045

D.C. No.
2:22-cr-00482-
GW-1

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted December 2, 2025
Pasadena, California

Filed March 3, 2026

Before: Consuelo M. Callahan, John B. Owens, and Lucy
H. Koh, Circuit Judges.

Opinion by Judge Owens;
Concurrence by Judge Koh

# SUMMARY[*]

## Criminal Law

The panel affirmed the conviction by jury trial of Jerry Boylan, the former captain of the *M.V. Conception*, for seaman's manslaughter under 18 U.S.C. § 1115, arising from a fire onboard that killed thirty-four people.

Boylan argued that the district court's jury instruction on § 1115 misstated the law, as it provided that guilt could follow if Boylan "engaged in misconduct and/or acted with gross negligence." According to Boylan, the term "misconduct" permitted the jury to convict him of something less that gross negligence, contrary to what § 1115 requires. Agreeing with the Fifth and Eleventh Circuits, the panel held that § 1115 does not require gross negligence, but merely negligence. The panel concluded that, to the extent Boylan argued there was still error because the instruction included the term "misconduct," any error was harmless because the jury instructions explicitly cautioned against conviction based on a lower standard than negligence; in framing the case, the district court repeatedly instructed the jury that gross negligence was the required standard and the government never argued that mere misconduct was sufficient for conviction; and the overwhelming evidence against Boylan established that the jury would have found him guilty absent the error.

Concurring, Judge Koh wrote separately to disagree with the majority opinion's reliance on the district judge's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

framing of the case and the prosecution's closing arguments to find harmless error in the jury instructions' use of "misconduct" to define the crime. As to these challenged jury instructions, Judge Koh would find harmless error solely based on the overwhelming evidence against Boylan.

The panel addressed other issues in a concurrently filed memorandum disposition.

**COUNSEL**

Alexander P. Robbins (argued), Assistant United States Attorney, Acting Chief, Criminal Appeals Section; Matthew O'Brien and Juan M. Rodriguez, Attorneys; Mark A. Williams and Brian R. Faerstein, Assistant United States Attorneys; Christina T. Shay, Assistant United States Attorney, Chief, Criminal Division; Bilal A. Essayli, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

Hunter Haney (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

# OPINION

OWENS, Circuit Judge:

Jerry Boylan, the former captain of the *M.V. Conception*, appeals from his conviction for seaman's manslaughter under 18 U.S.C. § 1115, arising from a fire onboard that killed thirty-four people. Boylan challenges, among other matters, the jury instructions' culpability requirement under § 1115.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

### A. The *Conception*

On August 31, 2019, the *Conception*—with Captain Boylan, five crew members, and thirty-three passengers— left port for three days of scuba diving near Santa Cruz Island, part of the Channel Islands off the coast of Santa Barbara, California. The *Conception* was a seventy-five-foot dive boat with three decks: a lower deck with passenger bunks, a main deck with a galley and dining area, and an upper deck with the wheelhouse and crew bunks. One stairway connected the upper deck with the main deck, with another in the galley between the main and lower decks. The lower deck bunk room also had an emergency escape hatch to the main deck galley, but it was difficult to locate without previous knowledge of its existence. While Captain Boylan had more than thirty years' experience, his five crew

---

[1] Boylan also challenges the jury instructions' causation requirement and the admission of certain experts' testimony. We address these claims in a concurrently filed memorandum disposition, in which we affirm.

members had little, ranging from almost two years at sea to slightly more than a month.

Fires pose extreme dangers for ships, and the *Conception* had multiple fire suppression components: a public address system audible to everyone on board; six fire extinguishers throughout the ship; a fire axe on the upper deck; and two heavy-duty firefighting stations on the main deck, each with a fifty-foot fire hose that could draw water from the ocean. Federal regulations alert captains that they should have roving patrols at night to detect fires onboard, 46 C.F.R. § 185.410, and should train crew on best practices if a fire breaks out, *id.* § 185.524. The *Conception*'s "Certificate of Inspection"—issued by the United States Coast Guard—mandates that "[a] member of the vessel's crew shall be designated by the master as a roving patrol at all times . . . when the passenger's bunks are occupied." Despite the obvious dangers that fires pose on ships, Boylan never trained his crew on what to do if one broke out. When a crew member asked Boylan when they could discuss safety procedures covered in his employee orientation packet, Boylan "chuckled" and responded with words to the effect of: "When we get to it."

### B. The Fire

On the early morning of September 2, Boylan and four crew members slept on the main deck, while thirty-three passengers and one crew member, Alexandra Kurtz, were in their bunks below deck. Although no one was assigned to be a roving patrol to detect fires—despite the regulation requiring otherwise—one crew member happened to be awake that morning to clean and prepare for the next day.

Shortly after that crew member settled into bed, he heard noises from the main deck. He left his bunk to investigate,

saw an ember glow from the back of the boat, and yelled "Fire, Fire!"[2]  He woke Boylan and the other crew members up top and tried to combat the fire, but his lack of training led him to unknowingly pass by the firefighting station twice.

As his untrained crew scrambled around the vessel in vain to stop the fire, Boylan remained in the wheelhouse.  He managed to call the Coast Guard, but never used the public address system to warn the thirty-four people below deck about the fire or instruct them how to escape through the emergency hatch.   He never passed the fire axe or extinguisher to the crew, nor made any personal effort to reach the crew and passengers below.  Other than a "five-second little huddle up," Boylan never instructed his crew to use the fire suppression equipment on board.  Instead, he ordered his crew to abandon ship, and jumped overboard.

While the crew followed Boylan overboard, one of them swam back to the *Conception* and tried to activate the fire hose, but could not.  That crew member then lowered the skiff into the water, enabling Boylan and the four crew members to depart to safety.

The thirty-four people trapped below deck—Carol Diana Adamic, Juha-Pekka Ahopelto, Neal Gustav Baltz, Patricia Ann Beitzinger, Vaidehi Devi Campbell Williams, Kendra Moore Chan, Raymond Scott Chan, Adrian Danielle Dahood-Fritz, Sanjeeri Satish Deopujari, Justin Carroll Dignam, Berenice Felipe, Lisa Ann Fiedler, Kristina Oline

---

[2] Although not part of the trial record, the National Transportation Safety Board concluded that the fire likely arose from a combination of lithium batteries, faulty wiring, smoking materials, and plastic trash cans. National Transportation Safety Board, Marine Accident Report: *Fire Aboard Small Passenger Vessel* Conception (Oct. 20, 2020), at 60–61.

Finstad, Andrew Aaron Fritz, Daniel Garcia, Marybeth Guiney, Yuko Hatano, Yulia Krashennaya, Alexandra Haley Kurtz, Xiang Lin, Charles Spencer McIlvain, Caroline Annette McLaughlin, Kaustubh Nirmal, Angela Rose Solano Quitasol, EvanMichel Solano Quitasol, Michael Storm Quitasol, Nicole Storm Solano Quitasol, Steven John Salika, Tia Nicole Adamic Salika, Sunil Singh Sandhu, Fernisa June Sison, Ted Stephen Strom, Kristian Marc Takvam, and Wei Tan—were not so fortunate.

While they valiantly tried to escape the burning boat—managing even to activate one of the fire extinguishers—none survived, all dying of smoke inhalation and asphyxiation. A brief video, recorded by one of the trapped passengers, showed their struggle to stay alive three minutes after Boylan called the Coast Guard and decided to jump overboard.

### C. The Indictment and Trial

A First Superseding Indictment charged Boylan with seaman's manslaughter in violation of 18 U.S.C. § 1115, which provides "[e]very captain . . . on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed, . . . shall be fined under this title or imprisoned not more than ten years, or both."  The district court dismissed that indictment, which largely tracked the statutory language, because it failed to allege that Boylan acted with gross negligence.  The court concluded that because the federal involuntary manslaughter statute, 18 U.S.C. § 1112, requires gross negligence, § 1115 must as well.  It also relied on cases that explored "common-law understandings incorporat[ing]" gross negligence "into an involuntary manslaughter charge under Section 1112," like

*United States v. Keith*, 605 F.2d 462 (9th Cir. 1979). The district court recognized that "the only published federal appellate decision directly on-point," *United States v. O'Keefe*, 426 F.3d 274 (5th Cir. 2005), explicitly held that § 1115 did not require gross negligence. But it was not "convinc[ed]" of the Fifth Circuit's decision in light of § 1112 and the common law involuntary manslaughter cases. The government ultimately did not appeal that decision, and instead obtained a Second Superseding Indictment, which alleged gross negligence.

At trial, the government presented the testimony of the surviving crew members, as well as expert testimony about where the blaze began and a captain's duty of care when it comes to fire safety on board vessels like the *Conception*. The jury instructions included that, to find Boylan guilty under § 1115, the government must prove beyond a reasonable doubt that he "engaged in misconduct and/or acted with gross negligence." After ten days of trial, the jury returned a guilty verdict, and Boylan received a four-year sentence.

## II. DISCUSSION

### A. Standard of Review

"We review de novo whether the district court's jury instructions misstated or omitted an element of the charged offense."[3]  *United States v. Chi Mak*, 683 F.3d 1126, 1133

---

[3] Boylan argues that because the district court had previously determined that gross negligence was required under § 1115, the "law of the case" doctrine and waiver preclude us from reviewing the issue. We reject these arguments. "Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc). And to the extent the

(9th Cir. 2012).  We "review the district court's formulation of the jury instructions for abuse of discretion."  *Id.*  An improper jury instruction does not require reversal if the error is harmless—that is, if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *United States v. Garcia*, 729 F.3d 1171, 1177–78 (9th Cir. 2013) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

### B. Section 1115 Requires Negligence, Not Gross Negligence

Boylan argues that the district court's jury instruction on § 1115 misstated the law, as it provided that guilt could follow if Boylan "engaged in misconduct and/or acted with gross negligence."  According to Boylan, the term "misconduct" permitted the jury to convict Boylan of something less than gross negligence, contrary to what § 1115 requires.  The government offers many responses, including that § 1115 does not require gross negligence, but merely negligence.  Hence, the government argues it actually met a higher burden than the statute requires, and there was ultimately no error requiring reversal.

We agree with the government that § 1115 does not require gross negligence.  Known as seaman's manslaughter, § 1115 provides that "[e]very captain . . . by whose misconduct, negligence, or inattention to his duties on [a] vessel the life of any person is destroyed . . . shall be . . . imprisoned not more than ten years."  18 U.S.C. § 1115.  Nowhere in the text is "gross negligence" required.

---

government did not interlocutorily appeal the district court's decision requiring gross negligence, we address the argument, as "we can affirm on any ground supported in the record."  *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017).

*See O'Keefe*, 426 F.3d at 279 (holding that the statute's "terms are unambiguous and therefore must be given their plain meaning").

Boylan is correct that in the context of involuntary manslaughter under § 1112, we have deemed "gross negligence" to be an "essential element" for a conviction. *Keith*, 605 F.2d at 464.   Section 1112(a) provides that involuntary manslaughter is "the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful   manner,   or   without   due   caution   and circumspection, of a lawful act which might produce death." 18 U.S.C. § 1112(a).  Although the statute does not contain the term "gross negligence," we concluded that this was essential for criminal liability—"the phrase 'without due caution and circumspection' . . . connote[d only] simple negligence sufficient for civil liability." *Keith*, 605 F.3d at 463; *see also Garcia*, 729 F.3d at 1175 ("We have consistently held that involuntary manslaughter requires proof beyond a reasonable doubt that the defendant acted with gross negligence.").

But the statute before us is not involuntary manslaughter; it is seaman's manslaughter.  And just because we have construed involuntary manslaughter to require gross negligence does not mean that same principle extends to seaman's manslaughter, a distinct statutory offense with a different text, history, and purpose.

As the Fifth Circuit observed when declining to import "gross negligence" into § 1115—even though, like the Ninth Circuit,   it   had   done   so   for   § 1112—involuntary manslaughter and seaman's manslaughter are "separate crimes   addressing   different   concerns   with   different penalties." *O'Keefe*, 426 F.3d at 278 n.1 (citation omitted).

Whereas § 1112 applies indiscriminately "to *all* persons, regardless of where the offense occurs or whether the offender had any unique responsibility or fiduciary duty towards the victim of the crime, . . . . § 1115 applies only to commercial vessels['] [ ] operators and owners."[4]  *Id.*; *see also United States v. Alvarez*, 809 F. App'x 562, 569 (11th Cir. 2020) ("In 18 U.S.C. § 1115, Congress affirmatively, unambiguously, and expressly criminalized the act of negligently causing a person's death while operating a vessel.").

And this distinction is meaningful.  Every day, vessel masters "have the lives of thousands of helpless human beings in their keeping, [and] should be held to the strictest accountability and required to exercise the highest degree of skill and care."  *Van Schaick v. United States*, 159 F. 847, 855 (2d Cir. 1908); *see also The James Griffiths*, 84 F.2d 785, 786 (9th Cir. 1936) (noting that a vessel master's duty "to exercise due diligence in making the vessel seaworthy as to her personnel . . . is one of the owner's highest obligations"); *Manley v. Nicodemisen*, 147 F. Supp. 229, 231 (D. Mass. 1957) ("The relationship of a master to a ship is a peculiarly close one.  His duty has been described as fiduciary.  It includes doing, at all times, everything possible to preserve the vessel.").  Given a captain's heightened obligations, an ordinary negligence standard is sensible in the seaman's manslaughter context.

---

[4] In *United States v. Kaluza*, 780 F.3d 647 (5th Cir. 2015), the Fifth Circuit revisited *O'Keefe* and the meaning of § 1115.  *Kaluza* concerned a different part of § 1115, but the court reiterated *O'Keefe*'s holding that "the plain text of the phrase 'misconduct, negligence, or inattention,'" was unambiguous.  *Id.* at 659–60.

The legislative history of § 1115 supports this reading. Section 1115's predecessor originally appeared in 1838 as part of legislation entitled "An Act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam." *United States v. McKee*, 68 F.4th 1100, 1003–04 (8th Cir. 2023) (citing Act of July 7, 1838, ch. 191, 5 Stat. 304); *see also United States v. Holtzhauer*, 40 F. 76, 78 (C.C.D. N.J. 1889) (explaining that Congress' purpose in promulgating the 1838 Act was to "establish a supervision over the conduct of the officers and other persons employed on any steam-boat or vessel navigating the waters of the United States").

Section 12 of the 1838 Act maintained the same culpability triad as what is now in § 1115: "misconduct, negligence, or inattention." Act of July 7, 1838, ch. 191, § 12, 5 Stat. 304, 306. And when the 1838 Act was reenacted in its present form in 1909, there was no change to that requirement. *United States v. LaBrecque*, 419 F. Supp. 430, 435 (D. N.J. 1976) (citing Act of Mar. 4, 1909, ch. 321, § 282, 35 Stat. 1088, 1144). Rather, the new statute was "virtually identical to the prior statute, the one difference being that vessels other than steamboats [we]re now included within its ambit, . . . reflecting technological developments." *Id.*

Meanwhile, in other maritime statutes, Congress has explicitly engrafted a gross negligence requirement. In penalizing individuals who negligently operate vessels, Congress imposes a civil penalty for "operating a vessel in a negligent manner," but makes it a misdemeanor to "operat[e] a vessel in a *grossly* negligent manner." 46 U.S.C. § 2302(a)–(b) (emphasis added). That Congress distinguished between the two forms of negligence in

another maritime misconduct statute—but refused to do so here—is telling of Congress' intent.

Nineteenth-century cases interpreting the predecessor statute to § 1115 are also in accord with an ordinary negligence standard.[5] *See United States v. Warner*, 28 F. Cas. 404, 407 (C.C.D. Ohio 1848) ("[A]ny act of 'misconduct, negligence or inattention'" is enough for guilt, and if Congress had intended for guilt to require "evidence of a positive, malicious intent, the words used would doubtless have been such as to have made that intention clear."); *United States v. Farnham*, 25 F. Cas. 1042, 1044 (C.C.S.D.N.Y. 1853) ("[I]t is no matter what may be the degree of misconduct, whether it be slight or gross."); *United States v. Collyer*, 25 F. Cas. 554, 577 (C.C.S.D.N.Y. 1855) ("It is not required of them to prove willful or intentional mismanagement or misconduct on the part of the accused."); *United States v. Keller*, 19 F. 633, 637 (C.C.D.W. Va. 1884) (defining "negligence" as "an omission to perform some duty" or "a violation of some rule, which is made to govern and control one in the discharge of some duty"); *see also Van Schaick*, 159 F. at 850 ("Intent is not an element of the offense, malice need not be proved."). We decline to disrupt this history by importing a new culpability standard into § 1115. Accordingly, we follow the Fifth and Eleventh

---

[5] To the extent Boylan argues that cases such as *Elonis v. United States*, 575 U.S. 723 (2015), and *Staples v. United States*, 511 U.S. 600 (1994), require imputing a gross negligence *mens rea*, we disagree. Those cases concerned statutes silent on mental state. *Elonis*, 575 U.S. at 732 (noting the statute "does not specify that the defendant must have any mental state with respect to these elements"); *Staples*, 511 U.S. at 605 (noting the statute "is silent concerning the *mens rea* required for a violation"). But § 1115 is not silent; its text explicitly permits conviction based on negligence.

Circuits and hold that § 1115 does not require gross negligence.

### C. Any Error with the Statutory Term "Misconduct" was Harmless

To the extent Boylan argues there is still error because the instruction included the term "misconduct," any error is harmless. That is, "the omitted [or misstated] element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *United States v. Collazo*, 984 F.3d 1308, 1336 (9th Cir. 2021) (en banc) (citing *Neder*, 527 U.S. at 17 (alteration in original)).

Specifically, Boylan argues that the statutory term "misconduct" permitted liability based on regulatory violations alone and conviction based on a lower standard than negligence. To the first point, the jury instructions explicitly cautioned against what Boylan alleges. Indeed, the district court warned that "[t]he mere fact that [Boylan] violated a regulation is not by itself sufficient to establish a violation of 18 U.S.C. § 1115. Rather, you must consider all of the relevant evidence regarding the existence or non-existence of gross negligence and the other elements of Section 1115."

To the second point, because this case was argued under a gross negligence theory, any error with the misconduct instruction is harmless.[6] In framing the case, the district court repeatedly instructed the jury that gross negligence was the required standard for culpability under § 1115. And the

---

[6] We do not decide whether an indictment alleging only misconduct, without any mention of negligence, would satisfy § 1115.

court suggested that gross negligence was not an optional element for proving § 1115.

In trying this case, the government never argued that mere misconduct was sufficient for conviction. During the government's closing argument, the few times the term "misconduct" was used, it was always tethered to "gross negligence." And when defining the phrase "Misconduct and/or Gross Negligence," the government relied on the definition of gross negligence—"reckless disregard for human life." Thus, the jury could not have based its conviction solely on misconduct.

Finally, the overwhelming evidence against Boylan—never training his inexperienced staff on fire safety procedures, failing to adhere to the regulatory requirement to have a roving patrol, jumping overboard instead of attempting to save any of the passengers trapped below deck, and so on—establishes that the jury "would have found [Boylan] guilty absent the error." *Garcia*, 729 F.3d at 1177 (quoting *Neder*, 527 U.S. at 18).

Because the district court's instruction held the government to a higher standard than what § 1115 requires, and the evidence of gross negligence was overwhelming, there was no reversible error.

**AFFIRMED.**

KOH, J., concurring:

I agree with my colleagues that any alleged error in the jury instructions' use of "misconduct" to define the crime was harmless in light of "the overwhelming evidence against Boylan."[1] Op. at 15; *see United States v. Collazo*, 984 F.3d 1308, 1336 (9th Cir. 2021) (en banc); *United States v. Garcia*, 729 F.3d 1171, 1177 (9th Cir. 2013); *Neder v. United States*, 527 U.S. 1, 17 (1999). Under our precedent, that is a sufficient basis to find harmless error, and the majority opinion could—and should—have stopped there. *See Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (1999) ("It is, however, an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground.").

The majority opinion does not stop there. Instead, it also decides that the alleged error was harmless because (1) the district judge "fram[ed]" the case as one of gross negligence, and (2) during the prosecution's closing arguments, "the few times the term 'misconduct' was used, it was always tethered to 'gross negligence.'" Op. at 14–15. I disagree with both of these reasons.

In this case, the Introductory Instructions stated: "The Government asserts that, as the captain of the Conception,

---

[1] 18 U.S.C. § 1115 states "Every captain, engineer, pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed, and every owner, charterer, inspector, or other public officer, through whose fraud, neglect, connivance, misconduct, or violation of law the life of any person is destroyed, shall be fined under this title or imprisoned not more than ten years, or both."

Defendant's misconduct and/*or* gross negligence caused those deaths. Among the alleged acts of misconduct and/*or* gross negligence are…" (Emphasis added).

The "Instructions as to the Crime" stated: "The Defendant is charged in the Indictment with a violation of 18 U.S.C. § 1115 which deals with misconduct and/*or* gross negligence of ship officers which causes the death of a person on navigable waters." (Emphasis added). The "Instructions as to the Crime" used the disjunctive phrase "misconduct and/*or* gross negligence" three more times. (Emphasis added).

The jury was also instructed that "you must base your verdict only on the evidence received in the case and these instructions," that the jurors had a "duty to apply the law as [given to them]," and that "arguments by the lawyers are not evidence."

It was the jury's duty to follow these instructions, and we must presume that they did so. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *Sparf v. United States*, 156 U.S. 51, 102 (1895). In fact, we presume that the jury "attend[ed] closely [to] the particular language of the trial court's instructions." *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). The majority's reasoning effectively reads the disjunctive "or" out of the instructions and assumes instead that the jury followed the district judge's framing of the case and the prosecution's closing arguments as to the applicable legal standard.

The majority does not and cannot cite any authority supporting the proposition that a jury instruction error may be harmless because of the district judge's framing of the case or the prosecution's closing arguments. The harmless error cases the majority cites, *Collazo*, *Garcia*, and *Neder*,

held that a jury instruction error may be harmless in light of the "overwhelming evidence" supporting conviction or the "totality of the instructions." *Collazo*, 984 F.3d at 1336; *Garcia*, 729 F.3d at 1178; *Neder*, 527 U.S. at 17. No case holds that the district judge's framing of the case or the prosecution's closing arguments are evidence or can supplant the jury instructions.

The majority cites to one sentence defining "reckless disregard for human life" in the ten paragraph long "Instructions as to the Crime." The cited sentence is in the paragraph defining the crime's *mens rea*, which stated:

> Second, the Defendant engaged in misconduct and/or acted with gross negligence which means acting with wanton or reckless disregard for human life. To establish reckless disregard for human life, it must be shown that (1) Defendant was aware of the serious risk to human life which his conduct created, or Defendant knew of facts which, if considered and weighed in a reasonable manner, indicate a substantial and unjustifiable risk to human life; and (2) he deliberately disregarded that substantial and unjustifiable risk of creating potentially life-threatening condition of which he was aware[.]

It is at a minimum ambiguous whether the definition of "reckless disregard for human life" applied to "gross negligence" only, or to the whole phrase "misconduct and/or gross negligence." Moreover, the disjunctive misconduct and/*or* gross negligence was in the first sentence of the above

paragraph and appeared in the same Instruction three more times:

> The Defendant is charged in the Indictment with a violation of 18 U.S.C. § 1115 which deals with misconduct and/*or* gross negligence of ship officers which causes the death of a person on navigable waters.
>
> Third, the Defendant's misconduct and/*or* gross negligence was the proximate cause of the death of a person on board the vessel.
>
> A proximate cause is one that played a substantial part in bringing about the death, so that the death was the direct result or a reasonably probable consequence of the Defendant's misconduct and/*or* gross negligence[.]

(Emphasis added). No amount of framing of the case by the district judge or closing arguments by the prosecution can negate these instructions.

We all agree that the alleged error of including "misconduct" in the jury instructions was harmless because the evidence in this case is overwhelming. *See Collazo*, 984 F.3d at 1336. That suffices, and we need not say more.